Slip Op. 03-145

# UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Judge Judith M. Barzilay**

-----------------------------------------------x

AMMEX, INC.,                          :

        Plaintiff,               :

        v.                            :          Court No. 02-00361

UNITED STATES,                        :

        Defendant.              :

-----------------------------------------------x

[Defendant's Motion to Dismiss is Granted.]

Decided: October 30, 2003

*Steptoe & Johnson LLP, Herbert C. Shelley, (J.William Koegel, Jr.), Alice A. Kipel*, for Plaintiff.

*Peter D. Keisler*, Assistant Attorney General, United States Department of Justice; *Barbara S. Williams*, Assistant Branch Director, International Trade Field Office; (*Amy M. Rubin*), Civil Division, United States Department of Justice, Commercial Litigation Branch; *Beth C. Brotman*, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, Bureau of Customs and Border Protection, of Counsel, for Defendant.

## OPINION

**BARZILAY, Judge**: Before the court is the motion of Defendant the United States ("government") to dismiss Plaintiff Ammex, Inc.'s ("Ammex") amendment to its complaint for lack of jurisdiction and for failure to state a claim upon which relief can be granted. On May 16, 2002, Ammex filed its original complaint with this court challenging the United States Customs Service's ("Customs")[1] November 21, 2001 revocation of its September 5, 2000 ruling letter

---

[1] Now, the Bureau of Customs and Border Protection.

authorizing Ammex to sell duty-free gasoline and diesel fuel from its Class 9 Customs-bonded warehouse and duty-free store at the Ambassador Bridge between Detroit, Michigan and Windsor, Canada ("Revocation Ruling"). *Compl.* ¶¶ 1, 2. In the complaint, Ammex invoked the court's jurisdiction under 28 U.S.C. § 1581(i), framing the issue as "whether fuel imports purchased by Ammex and sold from Ammex's duty-free store, for export only, may nevertheless be charged taxes and duties." *Id.* ¶ 5. The Revocation Ruling was based on the conclusion that gasoline and diesel fuel subject to section 4081 of the Internal Revenue Code, 26 U.S.C. § 4081, cannot qualify as duty-free under 19 U.S.C. § 1555(b)(8)(E) (2000) and 19 C.F.R. §§ 19.35(a) and 19.36(e) (2001).[2] *Id.* ¶¶ 1, 22. By leave of the court, Ammex amended its complaint. In the amended complaint, Ammex added a challenge alleging that Customs had denied Ammex's protest against exclusion of a particular entry of diesel fuel from duty-free entry on February 21, 2002. *Am. Compl.* ¶ 2. Because Ammex maintains that there was a protestable decision and denial of a valid protest under 19 U.S.C. § 1514(a)(4) and § 1515[3] regarding the February 21,

---

[2] Section 1555(b)(8)(E) provides that the "term 'duty-free merchandise' means merchandise sold by a duty-free sales enterprise on which neither Federal duty nor Federal tax has been assessed pending exportation from the customs territory." In addition, a "class 9 warehouse (duty-free store) may be established for exportation of conditionally duty-free merchandise by individuals departing the Customs territory, inclusive of foreign trade zones, by aircraft, vessel, or departing directly by vehicle or on foot to a contiguous country." 19 C.F.R. § 19.35(a). "Only conditionally duty-free merchandise may be placed in a bonded storage area of a Class 9 warehouse." *Id.* § 19.36(e). "'Conditionally duty-free merchandise' means merchandise sold by a duty-free store on which duties and/or internal revenue taxes (where applicable) have not been paid." *Id.* § 19.35(a). Finally, section 4081 of Title 26 provides that "[t]here is hereby imposed a tax . . . on . . . the entry into the United States of any taxable fuel for consumption, use, or warehousing." 26 U.S.C. § 4081(a)(1)(A).

[3] Protestable decisions include "the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws. . . ." 19 U.S.C. §1514(a)(4). Section 1515 provides procedures for administrative review of protests,

2002 entry,[4] Ammex additionally invokes the court's jurisdiction under 28 U.S.C. § 1581(a) in the amended complaint. *Id.* ¶ 6. As Defendant seeks to dismiss only the amendment to the complaint and concedes jurisdiction under section 1581(i), the issue before the court is whether the court has jurisdiction under section 1581(a).[5] For the following reasons, the court finds that there is no jurisdiction under section 1581(a) in this case. Accordingly, Defendant's Motion to Dismiss is granted.

---

including denial of protests.

[4] Entry number G17-0048875-3.

[5] Under section 1581(a) of title 28, this Court "shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section" 1515 of Title 19 of the United States Code. Under section 1581(i), this Court shall also have exclusive jurisdiction

> of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for--
> (1) revenue from imports or tonnage;
> (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
> (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
> (4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section. This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable either by the Court of International Trade under section

1516a(a) of Title 19 "or by a binational panel under article 1904 of the North American Free Trade Agreement or the United States-Canada Free-Trade Agreement" and section 1516a(g) of Title 19.

**I.**

*A.      Background.*

This Court has so far issued two decisions relating to the dispute regarding fuel sold at Plaintiff's Ambassador Bridge facility.[6]  In particular, on August 25, 2000, entertaining Plaintiff's challenge to a 1998 Customs ruling (HQ 227385), which extended an earlier Customs decision, this Court held that diesel fuel and gasoline are eligible for sale from duty-free stores (including Ammex's facility) under 19 U.S.C. §§ 1555(b) and 1557(a)(1).[7]  *See Ammex, Inc. v. United States*, 24 CIT __, __, 116 F. Supp. 2d 1269, 1273-76 (2000) ("*Ammex I*").  On September 5, 2000, Customs, by letter to Plaintiff, granted Plaintiff's request to expand its Class 9 duty-free warehouse to encompass gasoline and diesel fuel tanks located on the facility.  On October 23, 2000, Ammex solicited another letter from Customs to certify that fuel sold in Ammex's duty-free store was exempt from taxes, which request Customs forwarded to the Internal Revenue Service ("IRS").  On January 8, 2001, the IRS issued an informal letter contending that under section 4081 of the Internal Revenue Code, 26 U.S.C. § 4081, a tax must be imposed on any taxable fuel entering the United States, including gasoline and diesel fuel for consumption, use, or warehousing.  On November 21, 2001, after a notice and comment period and basing its decision on the IRS letter, Customs issued the ruling revoking its September 5, 2000 letter, which had permitted Ammex to sell duty-free gasoline and diesel fuel at the

---

[6] In addition, parties argued related issues before the United States Court of Federal Claims.  *See Ammex, Inc. v. United States*, 52 Fed. Cl. 303, *reh'g denied*, 52 Fed. Cl. 555 (2002).

[7] Section 1557(a)(1) provides for warehousing and withdrawal of merchandise from a warehouse.

Ambassador Bridge facility. In subsequent litigation, Ammex challenged Customs' Revocation Ruling arguing that Customs should be held in contempt for failing to abide by this Court's opinion in *Ammex I*. The Court, however, found that the intervening IRS letter (and the new information contained therein) made the issue presented distinct from that litigated in *Ammex I*. *See Ammex, Inc. v. United States*, 26 CIT __, 193 F. Supp. 2d 1325 (2002) ("*Ammex II*"), *aff'd*, 334 F.3d 1052 (Fed. Cir. 2003). The *Ammex II* Court consequently held that Customs was not in contempt of the Court's *Ammex I* ruling, nor was the relitigation of the issue barred by *res judicata*. Because "Ammex is entitled to challenge the basis of Customs' decision to revoke its September 5 letter," but must do so "anew in the proper procedural manner," *Ammex II* at 1330, this action ensued.

Ammex's Ambassador Bridge facility is situated beyond a U.S. Customs exit point within two miles of the Canadian border. All entry into and exit from the facility is regulated and controlled by U.S. Customs. The facility is configured in such a way that any vehicle entering the facility must necessarily come from the United States and, exiting the facility, it must necessarily enter Canada. Ammex's store sells a variety of duty-free items, as well as retail gasoline and diesel fuel the duty-free status of which is now in dispute.

As part of the enforcement of the Revocation Ruling, which became effective as of February 21, 2002, Customs required that any Ammex entries of gasoline and diesel fuel on or after that date be made as Type Code 01 (consumption) entries, as opposed to Type Code 21 (warehouse) entries. On February 21, 2002, Ammex attempted to enter 11,235 gallons of diesel fuel from Canada as a warehouse entry. Customs denied the warehouse entry, but allowed the

entry of fuel for consumption. On the entry/immediate delivery form (dated February 21, 2002) and entry summary form (dated February 22, 2002), Ammex included the following paragraph, at the bottom, set off by an asterix, and in capital letters:

* AMMEX COMPLETES THIS "TYPE CODE/NAME" UNDER PROTEST. THIS MOTOR FUEL IS IN EXPORT TRANSIT AND DESTINED FOR EXPORT SALE AT AMMEX'S DUTY FREE STORE. THE CORRECT TYPE CODE/NAME IS: 21 WAREHOUSE.

Customs did not treat this objection as a formal "protest."

### B.      *Parties' arguments*.

Plaintiff asserts that its "fuel came from Canada under a U.S. Customs 'in transit' bond until deposited into Ammex's Class 9 bonded warehouse," and was covered by a U.S. Customs warehouse bond while in the warehouse. *Pl.'s Reply to Def.'s Mot. to Dismiss* ("*Pl.'s Reply*") at 3. Plaintiff further asserts that the fuel was placed in a "'sterile area' approved and inspected by Customs, constructed for the specific purpose of exporting the fuel." *Id.* at 4. Plaintiff maintains that Customs' act on February 21, 2002 "improperly characterized the fuel as though for domestic consumption," and that "Customs' refusal to permit Ammex to make a warehouse entry for bonded export sale deprived the fuel of bonded export status." *Id.* at 5. Plaintiff thus claims that Customs' action on February 21, 2002 was a protestable decision. It furthermore asserts that it properly protested such action by including the paragraph on the entry documents.

In its motion to dismiss, the government first argues that there was no protestable decision. *Def.'s Mem. in Supp. of Mot. to Dismiss* ("*Def.'s Br.*") at 2-3. The government asserts that "[a]lthough the fuel may not have been allowed to be deposited into a Class 9 warehouse it was plainly not 'excluded' from entry or delivery." *Id.* at 2 (emphasis omitted). Moreover, the

government argues that "[e]ven if Customs' redirection of fuel away from a Class 9 warehouse could be construed as a protestable exclusion, the 'protest' itself is facially deficient." *Id.* at 3. The government claims that the language Ammex included on the entry papers falls short of the statutory and regulatory requirements for valid protests and should not be allowed under precedents of the United States Supreme Court and United States Court of Appeals for the Federal Circuit. *Id.* at 3-4 (citing 19 U.S.C. § 1514(c)(1), 19 C.F.R. §§ 174.13(a)(6) & 174.21(b), *Davies v. Arthur*, 96 U.S. 148, 151 (1877) and *Koike Aronson, Inc. v. United States*, 165 F.3d 906, 908 (Fed. Cir. 1999)); *Def.'s Reply to Pl.'s Opp. to Mot. to Dismiss* ("*Def.'s Reply*") at 8 (citing 19 C.F.R. § 174.12).

In its reply, Ammex responds by stating that "the statue governing entry of merchandise and Customs' own regulations confirm that protests are not limited to those decisions denying [physical] entry of merchandise into the United States." *Pl.'s Reply* at 7. According to Ammex, 19 U.S.C. § 1514(a)(4) is not so narrow as to exclude its "protest" at issue here. *Id.* at 8. As the term "entry" refers to a "documentation process," Ammex's argument implies that Customs' action in diverting the merchandise to a consumption entry is a protestable exclusion even if it did not involve a physical exclusion of the merchandise. *Id.*

Ammex next reiterates that its "protest" was proper and sufficient to inform Customs of "Ammex's objections and the nature of the decision being protested." *Id.* at 8. Specifically, Ammex claims that "the entry summary and Ammex's protest included 'the category of merchandise affected' by the protested decision and the 'nature of [Ammex's] objection and the reasons therefor.'" *Id.* at 10 (quoting 19 U.S.C. § 1514(c)(1)). According to Ammex, the "entry

summary [further] provided the name and address of the protestant/importer, the number and date of the entry, and the nature of objection (type/code)," in compliance with 19 C.F.R. § 174.13.  *Id.*  In support of its arguments, Ammex points to this Court's past decisions in favor of construing protests liberally and of finding them valid.  *Id.* at 11-12 (citations omitted).  In particular, Ammex maintains that "it has been long-established that a protest is legally sufficient if it reasonably apprises the collector of the objection."  *Id.* at 12 (citations omitted).

On the issue of a protestable decision, the government replies by emphasizing that "actual release of imported goods into the commerce of the United States without any notice to redeliver being issued to the importer negates any contention that the merchandise was excluded."  *Def.'s Reply* at 5 (emphasis omitted).  The government bases this argument in part on the Court's decision in *Lowa, Ltd. v. United States*, which noted that the term "entry" is closely tied to "the act of releasing merchandise into the commerce of the United States."  5 CIT 81, 86, 561 F. Supp. 441, 445 (1983), *aff'd*, 724 F.2d 121 (Fed. Cir. 1984).  Thus, according to the government, the diversion of the merchandise from a Class 9 warehouse (and its entry as for consumption) was not a protestable "exclusion."[8]

On the issue of a valid protest, the government characterizes Ammex's argument as a plea to view the protest in the context of the parties' prior dealings.  *Def.'s Reply* at 5; *Pl.'s Reply* at 2

---

[8] Here, the government also argues that since Ammex was aware of the Revocation Ruling and its implications, its original insertion of "warehouse" and "21" for the entry type and code (on the entry/immediate delivery form dated February 21, 2002) should be considered a "typographical" error. *Def.'s Reply* at 3.  Alternatively, it suggests that such action would constitute " a deliberate act in violation of a notice and comment ruling and in breach of the required standard of care" in filling out Customs forms. *Id.* at 3 n.3.  The court need not address this inchoate claim.

(stating that "Customs' motion [to dismiss] implies that Ammex's protest is a stand-alone, isolated event"). The government argues that the parties' "prior dealings" and any other "collateral information" have no bearing on the question of whether there is a valid protest. *Def.'s Reply* at 5-6; *Koike*,165 F.3d at 909 (cautioning against evaluating protests under "the surrounding circumstances" and taking into account Customs' purported "aware[ness] of the substance of the protesting party's claim"). While conceding that protests may be valid even when they are not on a Customs Form 19, the government urges that Customs' potential "awareness" of what and why Ammex protested should not be considered because the standard of testing a protest's validity "must be an objective one." *Def.'s Reply* at 10. To that end, the government argues that a "reasonable person viewing this statement might very well conclude not that the document is a protest, but that the filer intends to follow up the entry with the submission of a proper protest." *Id.* at 11 (emphasis omitted).

## II.

The issue before the court is whether it has jurisdiction pursuant to 28 U.S.C. § 1581(a). Jurisdiction under section 1581(a) requires that there be a denial of a valid protest by Customs. Protests are governed by section 1514 of Title 19 of the United States Code, which provides in pertinent part that "decisions of the Customs Service . . . shall be final and conclusive upon all persons . . . unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in" this Court. 19 U.S.C. § 1514(a). Accordingly, the court must decide whether Customs' requirement that Ammex enter

its diesel fuel entry on February 21, 2002 as for consumption (instead of a warehouse entry)

constitutes a protestable decision and whether Ammex properly protested such decision. If the

answer to either question is no, the court may not entertain the case under section 1581(a)

because administrative remedies required by the statute would not have been exhausted. Because

the court decides that there was no valid protest under section 1514(c)(1) and applicable

regulations, the court need not reach the question of whether there was a protestable decision.[9]

"[O]nce jurisdiction is challenged, the burden rests on plaintiff to prove that jurisdiction exists."

*United States v. Biehl & Co.*, 3 CIT 158, 160, 539 F. Supp. 1218, 1220 (1982) (citations

omitted).

Whether or not Customs' action was a protestable decision, Ammex's objection to the

consumption entry on the entry documents nevertheless fails to meet the requirements of a valid

protest. Pursuant to 19 U.S.C. § 1514(c)(1), "[a] protest must set forth distinctly and

---

[9] Protestable decisions include "the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws." 19 U.S.C. §1514(a)(4). Plaintiff maintains its fuel was "excluded" by Customs when it required a consumption entry. The government contends that requiring proper entry pursuant to the Revocation Ruling is not an "exclusion." The parties also disagree as to what extent the term "entry" refers to a "documentation process" under 19 U.S.C. § 1484(a)(1), 19 C.F.R. §§ 141.0a(a) and 141.68(a)(1), and to what extent it is linked to physical entry of merchandise under *Lowa, Ltd. v. United States*, 5 CIT 81, 561 F. Supp. 441 (1983), *aff'd*, 724 F.2d 121 (Fed. Cir. 1984). Moreover, the parties do not suggest that the situation here may be evaluated under any other provision of section 1514(a). This court has not addressed the question of whether importers may challenge Customs' decision to require entry of goods under one type of entry over another as an exclusion under section 1514(a). Although not the case here, if importers cannot thus challenge Customs' action, they may be without recourse for relief – hardly a desirable result. Nevertheless, the court declines to enter this sketchily chartered territory in this case as it is clear that Plaintiff cannot invoke (a) jurisdiction having failed to file a valid protest. While not bearing on the court's ruling, it is also important to note that Plaintiff's challenge to the Revocation Ruling will continue to be heard under section 1581(i).

specifically--

>    **(A)** each decision described in subsection (a) of this section as to which protest is made;
>    **(B)** each category of merchandise affected by each decision set forth under paragraph (1);
>    **(C)** the nature of each objection and the reasons therefor; and
>    **(D)** any other matter required by the Secretary by regulation.

The implementing regulation provides that a "protest shall contain the following information:

>    (1) The name and address of the protestant . . . ;
>    (2) The importer number of the protestant . . . ;
>    (3) The number and date of the entry;
>    (4) The date of liquidation of the entry, or the date of a decision not involving a liquidation or reliquidation;
>    (5) A specific description of the merchandise affected by the decision as to which protest is made;
>    (6) The nature of, and justification for the objection set forth *distinctly and specifically* with respect to each category, payment, claim, decision, or refusal;
>    (7) The date of receipt and protest number of any protest previously filed . . . ;
>    (8) If another party has not filed a timely protest, the surety's protest shall certify that the protest is not being filed collusively to extend another authorized person's time to protest; and
>    (9) A declaration, to the best of the protestant's knowledge, as to whether the entry is the subject of drawback, . . . ."

19 C.F.R. § 174.13(a) (emphasis added); *see also Koike Aronson, Inc. v. United States*, 165 F.3d 906, 908-9 (Fed. Cir. 1999) (reaffirming the so-called specificity requirement of section 174.13(a)(6)).  Moreover, "[i]f the protest relates to an administrative action involving exclusion of merchandise from entry or delivery under any provision of the Customs laws, . . . [the] protest shall clearly so state on its face."  19 C.F.R. § 174.21(b).  With respect to form and number of copies of protests, the regulations additionally state that "[p]rotests against decisions of a port director shall be filed in quadruplicate on Customs Form 19 or a form of the same size clearly labeled 'Protest' and setting forth the same content in its entirety, in the same order, addressed to the port director."  19 C.F.R. § 174.12(b).

Ammex alleges that its objection contained in the entry papers constitutes a protest. Specifically, Ammex wrote:

* AMMEX COMPLETES THIS "TYPE CODE/NAME" UNDER PROTEST. THIS MOTOR FUEL IS IN EXPORT TRANSIT AND DESTINED FOR EXPORT SALE AT AMMEX'S DUTY FREE STORE. THE CORRECT TYPE CODE/NAME IS: 21 WAREHOUSE.

However, this paragraph neither states the "reasons" for the objection, 19 U.S.C. § 1514(c), nor does it elaborate on the "justification for [the] objection set forth distinctly and specifically," 19 C.F.R. § 174.13(a)(6). Moreover, Ammex's objection does not "clearly" state that the grounds for the objection is an *exclusion* under § 174.21(b).[10] Nor are the entry summary form and entry/immediate delivery form sufficiently labeled as "Protest" and addressed to the appropriate Customs official to satisfy the requirements of 19 C.F.R. § 174.12(b). Ammex's objection merely states that the "type code/name" box was filled under protest. It is hardly possible to determine from the text of the objection why Ammex objected to the consumption entry, at least not without considering the history of the parties' dispute. The claim that "surrounding circumstances" could help to ascertain the content of protests was specifically rejected by the Federal Circuit in *Koike*. The *Koike* court dismissed the argument that the parties' prior communications could clarify protests and further advised that the "requirements for a valid protest that are contained in section 1514(c)(1) and the implementing regulation . . . are

---

[10] At oral argument the government conceded that the regulation does not require importers to use the specific word "exclusion" in a protest, if the content of the protest is otherwise clear. Whether refusing entry under a particular entry type (and simultaneously allowing it under a different entry type) constitutes an exclusion is an unsettled question. Precisely because it is an unsettled question, Ammex's attempt to protest as an exclusion Custom's requirement to enter its goods under a consumption entry cannot be sufficiently clear to alert the Customs official as to the nature of a possible protest, as required by the regulation.

mandatory." 165 F.3d at 909. In other words, protests are not "akin to notice pleadings [that] merely have to set forth factual allegations without providing any underlying reasoning." *Id.* (citation and internal quotations omitted).

Plaintiff attempts to place its document within the ambit of the long line of cases taking a liberal posture as to what constitutes a valid protest. *See Pl.'s Br.* at 11-12 (citing, *inter alia*, *Mattel, Inc. v. United States*, 377 F. Supp. 955, 960 (Cust. Ct. 1974) ("the court, taking a liberal posture, has held that, however cryptic, inartistic, or poorly drawn a communication may be, it is sufficient as a protest for purposes of section [1514] if it conveys enough information to apprise knowledgeable officials of the importer's intent and the relief sought.")). In *Mattel*, for instance, even though the plaintiff's letters requested reliquidation under a different statutory provision, the court held them to be valid protests. In so holding, the decision reviewed cases deeming all manner of writings to be protests despite missing or unclear information. The *Mattel* case did not cite and the court's research has failed to discover any previous cases in which the court held that a valid protest was made based on brief comments typed on a Customs form designed for another purpose. The court declines to accept Plaintiff's implied invitation to extend the liberal construction of a protest to include such a document.[11]

---

[11] At oral argument Ammex attempted to demonstrate that the entry documents contained all the required elements of a valid protest set forth in the statute and regulations. Even assuming that this contention has any merit when examining the documents after the fact, a ruling to the effect that Ammex filed a valid protest at the time of the entry on the same document used to effectuate that entry would contradict one of the basic tenets of customs law. It is the Customs official viewing the documents in the first instance who must recognize that a protest is being made, not the court or any other party. Customs officials cannot be expected to examine each entry paper to see whether or not it may constitute a protest. Each of Customs' forms fulfills a specific function, and an entry document is not a proper place to voice an objection to a Customs' action pertaining to an entry. This is not to suggest that only a Customs Form 19 must

As the government argues, the paragraph Ammex inserted on the entry papers could solely be viewed as an indication that a protest was about to follow (as opposed to constituting a valid protest in itself). Ammex did not file a proper protest after the entry and therefore may not preserve the court's jurisdiction under section 1581(a) in this case. As the Federal Circuit in *Koike* noted, "[b]ecause the statutory and regulatory requirements are jurisdictional, the consequence of failing to comply with them is harsh. Fortunately, however, the requirements are straightforward and not difficult to satisfy." 165 F.3d at 909. The court further notes that failing to satisfy the requirements of jurisdiction under section 1581(a) is not fatal to Ammex's case as Ammex's challenge to Customs' Revocation Ruling will be allowed to proceed under section 1581(i).[12] A separate order will be entered accordingly.

Dated : October 30, 2003
    New York, New York                        _____
                                         Judith M. Barzilay

---

be used to file a protest. Under existing and long standing case law, a separate letter containing the information required in the regulations and clearly labeled as a protest could have sufficed so long as the letter was in conformity with the importer's obligations under the statutory scheme and "sufficient to notify the [duty] collector of [the objection's] true nature and character." *Davies v. Arthur*, 96 U.S. 148, 151 (1877).

[12] Ammex claims that this case can proceed both under sections 1581(a) and (i). Ammex notes that this Court has permitted actions to proceed under both sections 1581(a) and (i) where different parts of the claim fell under different jurisdictional provisions. *Id.* at 14 (citing *Hanover Ins. Co. v. United States*, 25 CIT __, Slip Op. 01-57 (May 16, 2001) and *Sharp Elec. Corp. v. United States*, 20 CIT 948 (1996)). Additionally, Ammex asserts that it "should be permitted to proceed with both claims in the interest of judicial economy." *Id.* at 14 n.3. Having found that there is no (a) jurisdiction in this case, the court need not reach this issue.