Slip Op. 04-89

# UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Judge Judith M. Barzilay**

-------------------------------------------x

AMMEX, INC.,                              :

       **Plaintiff,**                    :

       v.                               :       **Court No. 02-00361**

UNITED STATES,                           :

       **Defendant.**                   :

-------------------------------------------x

[Plaintiff's Motion for Judgment upon an Agency Record is granted.]

Decided: July 20, 2004

*Steptoe & Johnson, Herbert C. Shelley, (J. William Koegel Jr.), Alice A. Kipel,* for Plaintiff.

*Peter D. Keisler*, Assistant Attorney General, United States Department of Justice, *(Barbara S. Williams)*, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, *(Amy M. Rubin)*, Trial Attorney; *Beth C. Brotman*, Attorney, Office of Assistant Chief Counsel, U.S. Bureau of Customs and Border Protection, of Counsel, for Defendant.


## OPINION

**BARZILAY, JUDGE:** This opinion joins the earlier writings of this Court addressing the issue

of whether a duty-free store can sell gasoline to travelers exiting the United States at its northern

border.[1] Before the court is a USCIT Rule 56.1 Motion for Judgment upon an Agency Record by

---

[1] *See Ammex, Inc. v. United States*, 24 CIT 851, 116 F. Supp. 2d 1269, 1273-76 (2000); 26 CIT __, 193 F. Supp. 2d 1325 (2002), *aff'd*, 334 F.3d 1052 (Fed. Cir. 2003), *cert. denied*, 124 S. Ct. 2159, No. 03-1004 (May 17, 2004); 27 CIT __, 288 F. Supp. 2d 1375 (2003); No. 02-00361, Slip Op. 03-165 (Dec. 17, 2003).

Plaintiff Ammex, Inc. In this action, Ammex challenges the Headquarters ("HQ") ruling letter

229215 (hereinafter "Revocation Ruling"), dated November 9, 2001, (AR.[2] 19), in which the

United States Customs Service[3] revoked its earlier letter ruling, dated September 5, 2000, (AR.

6), authorizing Ammex to sell gasoline and diesel fuel as duty-free merchandise at its

Ambassador Bridge duty-free store on the U.S.-Canadian border. Ammex also challenges

"Revocation of Ruling Letter and Treatment Relating to Gasoline & Diesel Fuel in a Class 9

Customs Bonded Warehouse," dated November 7, 2001, and published on November 21, 2001,

in Customs Bulletin & Decisions, vol. 35, no. 47 on page 5 (hereinafter "General Revocation").

(AR. 22.) Because the court decides that, before its decision to revoke, Customs should have

determined whether Ammex's fuel had in fact been assessed any federal tax, and because the

record reflects that no federal tax had been assessed on Ammex's fuel at the time of the

Revocation Ruling, Ammex's Motion for Judgment upon an Agency Record is granted.[4]

## I.

The decision in the case is compelled by its unique facts as outlined below. Ammex's

Ambassador Bridge facility is situated beyond a United States Customs exit point within two

miles of the Canadian border. All entry into and exit from the facility is regulated and controlled

---

[2] "AR." stands for Administrative Record compiled by the agency.

[3] Now organized as the Bureau of Customs and Border Protection.

[4] Before the court is also the government's Motion to Strike the declarations of Dannie Stamper and Renee Wrobel attached to Plaintiff's brief on its Motion for Judgment upon an Agency Record. Because the court did not rely on the declarations to reach its ultimate decision, the government's Motion to Strike is accordingly granted.

by U.S. Customs.  The facility is configured so that any vehicle entering the facility must necessarily come from the United States and, when exiting the facility, it must necessarily enter Canada.  Ammex's store sells a variety of duty-free items as well as retail gasoline and diesel fuel, the duty-free status of which is now in dispute.  The fuel in question came into the country from Canada wholesale and is sold at retail to customers entering Canada.

Partly because of its unique circumstances, the case has so far amassed an interesting and active litigation history.  On August 25, 2000, this Court (per Judge Wallach) upheld Plaintiff's challenge to a 1998 Customs ruling (HQ 227385), which extended an earlier Customs decision and held diesel fuel and gasoline eligible for sale from duty-free stores (including Ammex's facility) under 19 U.S.C. §§ 1555(b) and 1557(a)(1).  *See Ammex, Inc. v. United States*, 24 CIT 851, 116 F. Supp. 2d 1269, 1273-76 (2000) ("*Ammex I*").  The Court reasoned as follows:  The plain language of section 1557(a)(1)[5] of Title 19 shows that there can be only two exceptions to

_____

[5] 19 U.S.C. § 1557(a)(1) reads:

Any merchandise subject to duty (including international travel merchandise), with the exception of perishable articles and explosive substances other than firecrackers, may be entered for warehousing and be deposited in a bonded warehouse at the expense and risk of the owner purchaser, importer, or consignee. Such merchandise may be withdrawn, at any time within 5 years from the date of importation, for consumption upon payment of the duties and charges accruing thereon at the rate of duty imposed by law upon such merchandise at the date of withdrawal; or may be withdrawn for exportation or for transportation and exportation to a foreign country, or for shipment or for transportation and shipment to the Virgin Islands, American Samoa, Wake Island, Midway Islands, Kingman Reef, Johnston Island, or the island of Guam, without the payment of duties thereon, or for transportation and rewarehousing at another port or elsewhere, or for transfer to another bonded warehouse at the same port; except that--

**(A)** the total period of time for which such merchandise may remain in bonded warehouse shall not exceed 5 years from the date of importation; and

**(B)** turbine fuel may be withdrawn for use under section 1309 of this title without the payment of duty if an amount equal to the quantity of fuel withdrawn is shown to be used within 30 days

the types of dutiable merchandise that may be entered into a bonded warehouse: perishables and explosives. Since gasoline and diesel fuel do not fall under these exceptions, and since duty-free stores are a type of bonded warehouse, under section 1557(a)(1) diesel fuel and gasoline are eligible for sale from duty-free stores. The Court held that, by extension, it was error for Customs to exclude the fuel from entry into Ammex's sterile bonded warehouse.

Following the Court's order, by a letter dated September 5, 2000, Customs granted Plaintiff's request to expand its Class 9 duty-free warehouse to encompass gasoline and diesel fuel tanks located on the facility. Seeking greater assurance, on October 23, 2000, Ammex solicited another letter from Customs to certify that fuel sold in Ammex's duty-free store was exempt from future taxes, which request Customs understandably forwarded to the Internal Revenue Service ("IRS").

On January 8, 2001, the IRS issued an informal letter stating that under section 4081 of the Internal Revenue Code, 26 U.S.C. § 4081, a tax must be "imposed" on any taxable fuel entering the United States, including gasoline and diesel fuel for consumption, use, or warehousing. Upon gathering this new information, on November 21, 2001, after a notice and comment period, Customs issued the Revocation Ruling disallowing Ammex from selling duty-free gasoline and diesel fuel at the Ambassador Bridge facility on the basis that merchandise subject to federal excise taxes cannot be entered into a Class 9 Customs-bonded warehouse (and subsequently sold duty-free).

---

after the day of withdrawal, but duties (together with interest payable from the date of the withdrawal at the rate of interest established under section 6621 of Title 26) shall be deposited by the 40th day after the day of withdrawal on fuel that was withdrawn in excess of the quantity shown to have been so used during such 30-day period.

Upon receiving the revocation decision, Ammex returned to this Court to challenge the Revocation Ruling and seek enforcement of the Court's earlier order in *Ammex I*. The Court (again per Judge Wallach) declined Ammex's arguments and found that the intervening IRS letter (and new information contained therein) distinguished the issue from that of *Ammex I*. *See Ammex, Inc. v. United States*, 26 CIT __, 193 F. Supp. 2d 1325 (2002) ("*Ammex II*"), *aff'd*, 334 F.3d 1052 (Fed. Cir. 2003), *cert. denied*, 124 S. Ct. 2159, No. 03-1004 (May 17, 2004). The Court consequently held that Customs was not in contempt of the Court's *Ammex I* order, nor was the relitigation of the issue barred by *res judicata*. As "Ammex is entitled to challenge the basis of Customs' decision to revoke its September 5 letter," but must do so "anew in the proper procedural manner," this action ensued. *Ammex II* at 1330. The new action was assigned to the undersigned.[6]

The court has so far ruled on a motion to dismiss (jurisdictional challenge from the government) and a motion to compel discovery (attempt to expand the administrative record from Plaintiff) in this case. *See Ammex, Inc. v. United States*, 27 CIT __, 288 F. Supp. 2d 1375 (2003) (motion to dismiss); No. 02-00361, Slip Op. 03-165 (Dec. 17, 2003) (discovery motion).

## II.

The underlying issue here is whether the information contained in the IRS informal letter, that the Internal Revenue Code "imposes" a tax on fuel entering the United States, was sufficient for Customs to revoke the duty-free status of Ammex's fuel on the basis that such fuel was

---

[6] It is important to note that despite the appeal of *Ammex II*, Judge Wallach's original decision in *Ammex I* has never been appealed.

ineligible for entry as "duty-free merchandise" into a class 9 Customs-bonded warehouse to be sold duty-free.

The provisions for the scope and standard of review controlling this case are found in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. The scope of the court's review is confined to the record developed before the agency. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973). The standard of review, on the other hand, is the arbitrary and capricious standard. In particular, the "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971) ("*Overton Park*"), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).

Ammex argues that Customs acted unlawfully in concluding that gasoline and diesel fuel do not qualify as duty-free merchandise under 19 U.S.C. § 1555(b)(8)(E)[7] and 19 C.F.R. § 19.35(a)[8] because Customs' actions are based on an "unsupported assumption" (rather than any

---

[7] This section reads that "[t]he term 'duty-free merchandise' means merchandise sold by a duty-free sales enterprise on which neither Federal duty nor Federal tax has been *assessed* pending exportation from the customs territory." (emphasis added).

[8] The regulation reads in part:
A class 9 warehouse (duty-free store) may be established for exportation of conditionally duty-free merchandise by individuals departing the Customs territory, inclusive of foreign trade zones, by aircraft, vessel, or departing directly by vehicle or on foot to a contiguous country. Such articles must accompany the individual on his person or in the same aircraft, vessel, or vehicle in which the individual departs. "Conditionally duty-free

actual information) that Ammex was assessed or paid tax on the fuel at issue. Ammex argues that by not making a finding specific to Ammex's situation, Customs acted arbitrarily, capriciously, and otherwise not in accordance with law. *See Ammex Br.* at 2 (citing *Ross Cosmetics Dist. Ctrs. v. United States*, 17 CIT 814, *as modified by* 17 CIT 966 (1993) (setting aside an agency decision because a specific finding was not made)). Ammex points out that an agency's ruling "would be arbitrary and capricious if the agency . . . entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983), *quoted in Ammex Br.* at 16. In tandem to this argument, Ammex also argues that Customs' interpretation of the terms "impose" and "assess" contravenes the applicable statutes and regulations.[9]

For merchandise to be ineligible for entry into a bonded warehouse, federal tax or duty must have been "assessed" on such merchandise. Under 19 U.S.C. § 1557(a)(1), "[a]ny merchandise subject to duty (including international travel merchandise), with the exception of perishable articles and explosive substances other than firecrackers, may be entered for warehousing and be deposited in a bonded warehouse at the expense and risk of the owner

merchandise" means merchandise sold by a duty-free store on which duties and/or internal revenue taxes (where applicable) have not been *paid*. (emphasis added).

[9] Parties do not advance any policy arguments in support of their positions. The court is aware that its decision in this case leaves open the possibility that neither Canada nor the United States will collect excise taxes on the fuel at issue. The court encourages Customs and the IRS to formulate a common policy to prevent abuses and, if need be, apply to the legislature for a more coherent taxation scheme.

purchaser, importer, or consignee."[10] This provision is qualified by section 1555(b)(8)(E) of the same title, which provides that the "term 'duty-free merchandise' means merchandise sold by a duty-free sales enterprise on which neither Federal duty nor Federal tax has been *assessed* pending exportation from the customs territory." (emphasis added).

Customs revoked its earlier grant of duty-free status to Ammex's merchandise because the Internal Revenue Code "imposed" a tax on such merchandise which, Customs determined, was equivalent to taxes being "assessed." It is true that section 4081 of the Internal Revenue Code (Title 26) speaks of "impos[ing] a tax . . . on . . . the entry into the United States of any taxable fuel for consumption, use, or warehousing." 26 U.S.C. § 4081(a)(1)(A). However, as Ammex correctly observes, pursuant to the applicable statutes, imposition of a tax is not necessarily the same as the assessment of a tax. Under the Internal Revenue Code, "assessment" has a very specific meaning. That is, "assessment" is "a bookkeeping notation . . . made when

---

[10] Here, Ammex also raises a subissue connected to the term "subject to." Ammex argues that Customs ruled that if merchandise is "subject to a tax when entered," it is ineligible for duty-free status. *See Ammex Br.* at 22. Ammex argues that such interpretation "would do away entirely with duty-free stores: no merchandise subject to duty would ever be eligible for entry into a duty-free store." Yet, Ammex continues, section 1557(a)(1) allows the entry into a bonded warehouse of any goods (other than perishables or explosives) that are "subject to duty." The government responds without citing any authority that "[p]lainly, in the context of the duty-free store statute, 'assess' is to be considered synonymous with 'impose' and 'subject to,'" *id.*, and that interpreting the term "assess" as meaning "impose" or "subject to" would not conflict with the bonded warehouse statute (19 U.S.C. § 1557), which provides for the warehousing of "any merchandise subject to duty" except perishables and explosives. *See id.* at 21. The government would interpret "any merchandise subject to duty" in section 1557 as "any merchandise [that, if not exported within 5 years, will be] subject to duty" because subsection 1557(a) provides that duties will not be charged on imported merchandise entered into a bonded warehouse if that merchandise is exported within 5 years. Thus, the government would harmonize section 1555(b) with section 1557(a). For the reasons stated in the text of the opinion, the court agrees with Ammex that the terms "assess" and "subject to" are not synonymous in this case under the applicable statutes.

the Secretary or his delegate establishes an account against the taxpayer on the tax rolls." *Laing v. United States*, 423 U.S. 161, 171 n.13 (1976) *quoted in Ammex Br.* at 18; *see also* 26 U.S.C. § 6203 (defining how and when a tax is assessed).  The record contains no indication that any such account had been established as to Ammex's fuel at the time of the Revocation Ruling.  A recent Supreme Court decision further supports this conclusion.  In *Hibbs v. Winn*, No. 02-1809, slip op. at 10, 542 U.S. __ (June 14, 2004), the Court interpreted the term "assessment" in tax law as "closely tied to the collection of a tax, *i.e.*, the assessment is the official recording of liability that triggers levy and collection efforts."  In light of this guidance, the court cannot say that any tax had been "assessed" on Ammex's fuel, making it ineligible for entry into a bonded warehouse.  Accordingly, it was error for Customs to issue the Revocation Ruling without first ascertaining whether any taxes had been assessed on Ammex's fuel and then to invoke 19 U.S.C. § 1555(b)(8)(E) in the manner it did.

The government argues that the term "assess" applies to both federal duties and taxes under section 1555(b)(8)(E).  *See Def.'s Br.* at 16-17.  The government thus urges the court not to follow the "restrictive" and "technical" definition of "assess" found in the Internal Revenue Code.  The government asserts that "[a]s the term 'assess' is not defined for customs purposes within Title 19 of the United States Code, the proper meaning to apply is the common meaning."  *Id.* at 18.  The government then goes on to assert that one of the dictionary definitions of "assess" is "impose."  *Id.* at 19.

The government's argument is not persuasive.  The court must read the term in its "ordinary meaning" only when it has not been defined by Congress.  *See Ammex Br.* at 20 (citing

*Hoechst-Roussel Pharms. v. Lehman*, 109 F.3d 756, 758-59 (Fed. Cir. 1997)).  Congress has already defined the term "assess" as it relates to taxes despite the fact that the definition is not found in Title 19.  The "vast majority" of courts use the definition of "assess" as it is in the Internal Revenue Code in evaluating a federal income tax.  *In re Lewis*, 199 F.3d 249, 252 & n.8 (5th Cir. 2000).  The *Lewis* court specifically pointed out that, since dictionaries contain many definitions for the term "assess," most courts use the Internal Revenue Code definition.  The court will follow such a definition when used in a customs context when the underlying issue as here concerns assessment of federal taxes.[11]

The government further argues that the court cannot properly consider additional evidence regarding whether a tax has been assessed on fuel sold by Ammex and cannot properly determine that the Revocation Ruling is contrary to law based on the review of such additional evidence.  *See Def.'s Br.* at 14.  The court agrees but notes that its ultimate decision is not based on any new information outside the administrative record.  It was explicitly spelled out in the agency's decision that no determination as to "assessment" or "payment" of any taxes was made.  The decision regarding Ammex was based solely on the language in 26 U.S.C. § 4081 as cited to Customs by the IRS in its informal letter that this provision "imposed" a tax on fuel entering the United States.  Customs announced in the Revocation Ruling:

---

[11] By the same token, the court does not find applicable the cases from this Court relating to "imposition" and "assessment" of duties because of the necessarily narrow application of these terms in an antidumping or countervailing duty context.  *See, e.g., Dupont Teijin Films USA, LP v. United States*, 27 CIT __, 297 F. Supp. 2d 1367 (2003).  Further, the court observes that "impose" is not the first given meaning of the term "assess."  *See* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 109 (1988).  The primary meaning of "assess" is to fix or determine something, such as tax.  Thus, under an ordinary meaning reading "assess" does not always mean "impose," and *vice versa*.

The issue under consideration is whether diesel fuel and gasoline for which a Federal Tax has been assessed can qualify as duty-free merchandise for the purposes of entry into a Class 9 Customs bonded warehouse. Only fuel on that [*sic*] neither duty nor tax has been assessed can qualify as duty-free fuel in conformity with 19 U.S.C. § 1555(b)(8)(E). This same statute defines duty-free merchandise as merchandise on which neither Federal duty nor Federal tax has been assessed pending exportation. However[,] because . . . 16 [*sic*] U.S.C. 4081 imposes a tax upon entry into the United States of any taxable fuel for consumption, use, or warehousing this fuel cannot qualify for duty-free status and cannot be sold from class 9 Customs bonded warehouses.

(AR. 19.) In its General Notice of the revocation Customs further observed:

This decision does not determine whether Ammex actually paid the tax. The only determination is that fuel which is assessed a tax under 26 U.S.C. 4081 cannot qualify for entry under 19 U.S.C. 1555(b)(1). Revocation of the ruling does not prevent Ammex from showing that no tax was assessed and therefore, it would not be covered by the revocation.

(AR. 22 at 3.)

Moreover, contrary to what the government claims, the fact that merchandise "might not" satisfy the statutory definition of duty-free merchandise does not constitute sufficient grounds for the decision to revoke. *Def.'s Br.* at 13. Customs should have acquired unambiguous information specific to Ammex's fuel on the question of whether such fuel had in fact been assessed any taxes. *See* 19 U.S.C. § 1555(b)(8)(E) (defining duty-free merchandise as merchandise for which neither federal duties nor taxes have been assessed). The court cannot uphold a Revocation Ruling based on a nonbinding, informational, general letter from the IRS bearing no specifics pertaining to Ammex's situation. To do so would be to ratify a clear error of judgment. *See Overton Park*, 401 U.S. at 416.[12]

---

[12] The government adds that, even if the court finds that the administrative record does not support Customs' decision, the proper remedy is to remand the case to Customs. Under the APA, the court must hold unlawful and set aside an agency decision that is arbitrary, capricious,

Finally, the court observes (and the government concedes) that applicable Customs'

regulations are at odds with Customs' interpretation of the statute in Ammex's case. The

regulations provide that a "class 9 warehouse (duty-free store) may be established for exportation

of conditionally duty-free merchandise by individuals departing the Customs territory, inclusive

of foreign trade zones, by aircraft, vessel, or departing directly by vehicle or on foot to a

contiguous country." 19 C.F.R. § 19.35(a). "Only conditionally duty-free merchandise may be

placed in a bonded storage area of a Class 9 warehouse." *Id.* § 19.36(e). "'Conditionally duty-

free merchandise' means merchandise sold by a duty-free store on which duties and/or internal

revenue taxes (where applicable) have not been *paid*." *Id.* § 19.35(a) (emphasis added). Because

the regulations are meant to clarify and implement 19 U.S.C. § 1555, the language of the

regulation speaking of "payment" of taxes lends more credibility to Ammex's position. That is,

---

or contrary to law. *See* 5 U.S.C. § 706(2)(A). "Implicit" in the power of the court to set aside the agency decision is the power to remand to the agency for further proceedings. *Sec'y of Labor v. Farino*, 490 F.2d 885, 891 (7th Cir. 1973). On the other hand, the court need not remand if the remand would be "futile" by virtue of having no effect on the result of the case. *PPG Indus., Inc. v. United States*, 11 CIT 303, 309, 660 F. Supp. 965, 970 (1987). Because the record unequivocally demonstrates that Ammex's fuel was not "assessed" any taxes prior to the Revocation Ruling, a remand would be futile to determine this fact. Moreover, the court follows case law in observing that the agency is "not entitled to a second bite of the apple just because it made a poor decision." *McDonnell Douglas Corp. v. Nat'l Aeronautics & Space Admin.*, 895 F. Supp. 316, 319 (D.D.C. 1995). As the District Court in the District of Columbia explained, the fact that the record was inadequate to support the agency's "erroneous decision" is different from its "being inadequate to support any decision or from suffering a procedural deficiency that might necessitate remand." *Id.* Otherwise, "administrative law would be a never ending loop from which aggrieved parties would never receive justice." *Id.* Here, the court notes Plaintiff's position in the no-man's land between Customs and the IRS. On the other hand, this opinion does not address the question of what Customs should do in the event the IRS in fact "assesses" taxes on Ammex's fuel in the future. The court notes that it was not until after this action was filed that the IRS made an assessment for the period in question, *see Oral Arg. Tr.* at 8, and Ammex is currently contesting that decision, *see id.* at 34.

Customs should have looked into whether Ammex had in fact been assessed or paid any taxes on its fuel prior to taking any further action in this case. Customs announced in its General Notice to revoke that no such determination was made before the revocation. (AR. 22 at 3.) As explained above, without this specific finding in the record the agency's determination is unsupported by the necessary facts and must be set aside. *See Overton Park*, 401 U.S. at 416 (under the abuse of discretion standard, the court must consider "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment").[13]

## III.

For all the foregoing reasons, Plaintiff's Motion for Judgment upon an Agency Record is GRANTED.

Dated:  July 20, 2004                                         /s/ Judith M. Barzilay
_____                          _____
New York, NY                                                Judith M. Barzilay, Judge

---

[13] Ammex also argues that the Export Clause of the Constitution prohibits taxation of articles that are exported and that section 4081 of the Internal Revenue Code is unconstitutional. The Export Clause provides that "[n]o tax or duty shall be laid on Articles exported from any State." U.S. Const. art. I, § 9, cl. 5. The Clause "strictly prohibits any tax or duty . . . that falls on exports during the course of exportation." *United States v. IBM*, 517 U.S. 843, 848 (1996). Even when a tax is not directly aimed at exports, "the Export Clause allows no room for any federal tax, however generally applicable or non-discriminatory, on goods in export transit." *United States v. U.S. Shoe Corp.*, 523 U.S. 360, 367 (1998); *accord A.G. Spalding & Bros. v. Edwards*, 262 U.S. 66, 69 (1923) ("Articles in course of transportation cannot be taxed."). While there is no question that the court is competent to decide the constitutional issue pursuant to *United States v. U.S. Shoe Corp.*, 523 U.S. 360 (1998) (CIT can decide the constitutionality of the harbor maintenance tax) and *J.S. Stone, Inc. v. United States*, 27 CIT __, 297 F. Supp. 2d 1333 (2003) (CIT is empowered to provide complete relief), the court need not reach this issue.