# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

04-1604

AMMEX, INC.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

Brian S. Goldstein, Duane Morris LLP, of New York, New York, argued for plaintiff-appellee. On the brief were J. William Koegel, Jr., Herbert C. Shelley and Alice A. Kipel, Steptoe & Johnson, LLP, of Washington, DC. Of counsel was Bruce C. Bishop.

Amy M. Rubin, Attorney, International Trade Field Office, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellant. With her on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, of Washington, DC; and, Barbara S. Williams, Attorney in Charge, International Trade Field Office. Of counsel on the brief was Beth C. Brotman, Chief Counsel, United States Customs and Border Protection, of New York, New York.

Appealed from: United States Court of International Trade

Judge Judith M. Barzilay

# United States Court of Appeals for the Federal Circuit

04-1604

AMMEX, INC.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

_____

DECIDED:  August 17, 2005

_____

Before LOURIE, RADER, and GAJARSA, Circuit Judges.

RADER, Circuit Judge.

The United States Court of International Trade determined that the United States Customs Service (Customs) wrongfully revoked permission for Ammex to sell duty-free fuel from its Class 9 Customs bonded warehouse.  Ammex, Inc. v. United States, 116 F. Supp. 2d 1269 (Ct. Int'l Trade 2000) (Ammex I).  Because Customs issued its Revocation Ruling without first ascertaining whether any federal tax had actually been assessed on Ammex's fuel, the revocation was an abuse of discretion.  Therefore, this court affirms.

I.

Ammex operates a duty-free store, i.e., a Class 9 Customs bonded warehouse, and gas station, at Ambassador Bridge between Detroit, Michigan and Windsor, Ontario.  The geography offers no direct physical route for products stored or sold at the

store to enter the United States. Thus, cars entering the gas station must proceed into Canada upon exit. In other words, the products sold in the store must be exported.

Ammex has long confronted Customs over the question of duty-free import of fuels. In late 1993 and early 1994 Ammex requested approval to add gasoline and diesel fuel to its duty-free offerings. In June 1994, Customs denied that request. Customs explained in its denial that fuel is an "unidentifiable fungible" good that could be reimported without any way for Customs to collect duties.

After Customs affirmed its decision in a second opinion letter, Ammex brought the case to the Court of International Trade. In August 2000, that court declared unlawful Customs' prohibition on selling fuel duty-free. The court pointed out that the statute that governed duty-free treatment of warehoused merchandise specifically excluded only perishable articles and explosives, but not diesel fuel and gasoline. Ammex I, 116 F. Supp. 2d at 1273. The court refused to allow Customs to expand the statutory exemption to exclude "unidentified fungibles." Id. Therefore, on September 5, 2000, Customs granted Ammex permission to bring its fuel supplies within its bonded warehouse "in order to facilitate the immediate availability of the bonded fuel for sale."

In October 2000, Ammex asked Customs to confirm that fuel sold at its Ambassador Bridge facility would not be subject to taxes at the time of bonded entry into the United States. Customs forwarded the request to the Internal Revenue Service (IRS). The IRS declined to make a formal ruling on the question in the absence of a formal request. Instead, the IRS offered Ammex "general information [that may] be useful to you." This information was that "Section 4081 of the Internal Revenue Code imposes a tax on certain removals, entries and sales of taxable fuel."

Customs immediately revoked its permission for duty-free sales, because "the imported gasoline and diesel fuel in issue here was assessed with a tax under 26 U.S.C. 4081 . . . . Consequently that fuel does not meet the statutory definition of duty-free merchandise . . . ."

Ammex returned to the United States Court of International Trade, asking it to find Customs in contempt for revoking the authorization that followed the decision in Ammex I. The trial court denied that motion in February, 2002. Ammex, Inc. v. United States, 193 F. Supp. 2d 1325 (Ct. Int'l Trade 2002) (Ammex II). On appeal, this court affirmed the decision in Ammex II. 334 F.3d 1052 (Fed. Cir. 2003) (Ammex III).

Ammex then brought the present action in the Court of International Trade under 28 U.S.C. § 1581(i) and the Administrative Procedures Act, 5 U.S.C. § 706(2)(A). The trial court found in favor of Ammex, reasoning that "it was error for Customs to issue the Revocation Ruling without first ascertaining whether any taxes had been assessed on Ammex's fuel." Ammex, Inc. v. United States, 341 F. Supp. 2d 1308, 1312 (Ct. Int'l Trade 2004) (Ammex IV). Customs appeals.

II.

Here, the Court of International Trade rendered judgment upon the administrative record under U.S. Court of International Trade Rule 56.1, and made no factual determinations of its own. This court reviews such a judgment without deference. See Defenders of Wildlife v. Hogarth, 330 F.3d 1358, 1364 (Fed. Cir. 2003); see also Bannum v. United States, 404 F.3d 1346 (Fed. Cir. 2005) (similar standard of review for judgment under Court of Federal Claims Rule 56.1); cf. F.LLI De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1031 (Fed. Cir. 2000) (factual

determinations made by the Court of International Trade are reviewed for clear error on a Court of International Trade Rule 56.2 motion for judgment on an agency record). This court reapplies the standard of review of the Administrative Procedures Act, under which the court will "hold unlawful and set aside agency action, findings, and conclusions found to be--(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); Defenders, 330 F.3d at 1364.

Two statutory provisions influence the determination of the legitimacy of Customs' revocation. The first, from the Tax Code, was the provision noted in the IRS letter. That provision states that a tax is "imposed" on "the entry into the United States of any taxable fuel for consumption, use, or warehousing." 26 U.S.C. § 4081(a)(1)(A)(iii) (2000) (emphasis added). Because Ammex places its imported fuel in a warehouse, this provision appears to make those imports subject to a tax.

The second provision, from the Tariff Act, defines duty-free merchandise as "merchandise sold by a duty-free sales enterprise on which neither Federal duty nor Federal tax has been assessed pending exportation from the customs territory." 19 U.S.C. § 1555(b)(8)(E) (2000) (Emphasis added). Under Customs' view of this case, this provision removes Ammex's goods from the duty-free category because the "imposition" of a tax under 26 U.S.C. § 4081(a)(1)(A)(iii) is an "assessment" of a tax pending exportation. Therefore, these goods cannot be "duty-free merchandise" under 19 U.S.C. § 1555(b)(8)(E).

The interplay of these statutory provisions depends on the meaning of "assessed" and "imposed." In the context of taxation, the Internal Revenue Code defines "assessment" in terms of a specific process: "assessment shall be made by

04-1604                                    4

recording the liability of the taxpayer in the office of the Secretary." 26 U.S.C. § 6203 (2000). Following this statute, the Supreme Court has stated: "[T]he assessment is the official recording of liability that triggers levy and collection efforts." Hibbs v. Winn, 124 S. Ct. 2276, 2286 (2004) (analyzing the meaning of the term "assessment" in the Tax Injunction Act). Thus, in the context of taxation, an assessment is a specific act that goes no further than the determination and recordation of a liability.

In the customs context also, "assessment" refers to the fixing of an amount of liability. The Tariff Act states that Customs first "appraises" imported merchandise and then "assesses" the applicable duties. 19 U.S.C. § 1502 (2000). Finally, Customs must "liquidate" the entry. 19 U.S.C. § 1500(d) (2000).[1] Therefore, the Tariff Act and the Internal Revenue Code agree that "assessment" is a recordation of the calculated amount of liability.

In contrast, "imposed" has a more general meaning than "assessed." While assessment determines the specific amount of liability, imposition is simply a statement that a liability exists. This statement may include a rate — e.g., a duty rate or a tax rate — that would be used to compute the amount of the liability, and thus arrive at an assessment. The wording of § 4081, "[t]here is hereby imposed a tax at the rate specified in paragraph (2)," (emphasis added) shows that imposition creates a

---

[1]    Before any imported goods enter a bonded warehouse, the proprietor of the warehouse must supply a bond to the government to "secure the Government against any loss or expense connected with or arising from the deposit, storage, or manipulation of merchandise in such warehouse." 19 USC § 1555(a). Therefore, after assessing, or fixing, the duties, liquidation occurs when Customs refunds to the importer the difference between the duty and the bond amount or the importer pays Customs the same difference. In Customs' words, liquidation is "the final computation or ascertainment of the duties (not including vessel repair duties) or drawback accruing on an entry." 19 C.F.R. § 159.1.

responsibility to pay a tax, at a specific rate, but does not involve a calculation of the actual tax amount.    In the Tariff Act too, imposition is the creation, but not calculation, of a liability: for example, Customs may provide to an importer, upon request,  "the classification and the rate of duty imposed upon designated imported merchandise."  19 U.S.C. § 1516(a)(1) (2000) (emphasis added).  The Department of Commerce itself, in the context of countervailing duties, understands that an imposition is only the precursor of an assessment.  For example, Commerce acknowledges that a countervailing duty is imposed upon the issuance of a countervailing duty order.  See  Dupont Teijin Films USA, LP v. United States, 407 F.3d 1211, 1217 (Fed. Cir. 2005).  But a countervailing duty order defines an amount and "directs customs officers to assess a countervailing duty equal to [a specified amount]" 19 U.S.C. § 1671e (2000) (emphasis added).  Thus, in both the Tariff Act and the Internal Revenue Code, "imposition" is a statement that a liability, of an amount not yet calculated or "assessed," exists.

The Court of International Trade correctly observed that "imposition of a tax is not necessarily the same as the assessment of a tax."  Ammex IV, 341 F. Supp. 2d at 1312. The trial court was also correct when it held that the difference between "impose" and "assess" means that Customs impermissibly truncated the process of determination of duty-free status when it revoked Ammex's permission to sell fuels duty-free.  Id.  Duty-free merchandise under title 19 is "merchandise sold by a duty-free sales enterprise on which neither Federal duty nor Federal tax has been assessed," so that merchandise in a bonded warehouse remains duty-free until a Federal duty or tax "has been assessed." Because imposition is a prerequisite for assessment, the statute cited by the IRS, 26 U.S.C. § 4081(a)(1)(A)(iii), merely "imposes" a tax on fuels.  This statute may trigger an

assessment. However, the record of this case on appeal does not show that the IRS has ever assessed Ammex with a specific tax liability. The general information letter from the IRS did not assess any tax liability on Ammex's fuel. The record does not show any recording act that fixed the amount of tax liability on entry of this merchandise during the six months Ammex sold duty-free fuel from its facility. In sum, there was not an assessment of tax, and certainly not a payment of any tax, on the fuel. In the words of the Court of International Trade, "Customs should have looked into whether Ammex had in fact been assessed or paid any taxes on its fuel prior to taking any further action in this case. . . . [W]ithout this specific finding in the record the agency's determination is unsupported by the necessary facts and must be set aside." Id. at 1315.

Because Customs' action in deciding to revoke Ammex's permission to sell duty-free fuel, without determining whether Ammex's fuel had in fact been assessed any tax, was an abuse of discretion, the judgment of the Court of International Trade granting Ammex's Motion for Judgment upon an Agency Record is affirmed.

COSTS

Each party shall bear its own costs.

AFFIRMED