Slip Op. 05-71

# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: CARMAN, JUDGE

_____

INTERNATIONAL CUSTOM        :
PRODUCTS, INC,                            :
                                           :

           Plaintiff,              :
                                           :

v.                                      :          Court No. 05-00341
                                          :

UNITED STATES OF AMERICA,    :
                                           :

           Defendant.          :

_____


[Judgment is entered for Plaintiff after hearings and full consideration of the pleadings, papers, record, and briefs submitted by the parties. Plaintiff's Motion for Summary Judgment is granted. Defendant's Motion to Dismiss is denied. Defendant's Motion for Judgment on the Agency Record is denied.]


     _Mayer, Brown, Rowe & Maw, LLP (Simeon Munchick Kriesberg),_ Washington, D.C., for Plaintiff.

     _Peter D. Keisler,_ Assistant Attorney General; _Barbara S. Williams,_ Attorney in Charge, International Trade Field Office; _Edward F. Kenny,_ U.S. Department of Justice, Civil Division, Commercial Litigation Branch, for Defendant.

Dated: June 15, 2005

## OPINION

CARMAN, JUDGE: This case is before this Court pursuant to the following motions of the parties: Plaintiff's Motion for Summary Judgment[1]; Defendant's Motion to Dismiss Plaintiff's Action for Lack of Subject Matter Jurisdiction and for Failing to State a Claim upon which Relief Can Be Granted ("Defendant's Motion to Dismiss"); and Defendant's Motion for Judgment on the Agency Record Pursuant to Rule 56.1 of the Rules of the United States Court of International Trade ("Defendant's Motion for Judgment on the Agency Record"). Plaintiff contested the imposition of a rate advance by the Bureau of Customs and Border Protection ("Customs") on certain imported product referred to as "white sauce." Based upon the findings of fact and conclusions of law set forth below, this Court enters final judgment in favor of Plaintiff.

## BACKGROUND

Plaintiff – International Custom Products, Inc. ("ICP" or Plaintiff) – is an importer and distributor of dairy ingredients. It is not presently a manufacturer but has made a multimillion dollar investment in a manufacturing facility that is under construction in Pennsylvania. Plaintiff imported a product referred to as "white sauce," which is the imported article that is the subject

---

[1]At the time Plaintiff's Motion for Summary Judgment was filed, the administrative record in this case was not available. Because the administrative record is now available and is the basis for a decision on the merits in this case, this Court will treat Plaintiff's Motion for Summary Judgment as a motion for judgment on the agency record.

of this litigation. White sauce is a milkfat based product that is used as a base for other products (for example, sauces, salad dressings, and processed cheeses).

Between 1988 and 1994, Plaintiff purchased imported white sauce in domestic transactions. In 1998, in anticipation of itself becoming an importer of white sauce, Plaintiff sought a binding tariff classification ruling from the United States Customs Service (now the Bureau of Customs and Border Protection ("Customs")). On January 20, 1999, Customs issued New York letter ruling D86228, which classified the product described in Plaintiff's ruling request in Harmonized Tariff Schedule of the United States ("HTSUS") tariff subheading 2103.90.9060.[2] HTSUS tariff subheading 2103.90.9060 has since been renumbered and is currently tariff subheading 2103.90.9091.[3]

Plaintiff has been entering white sauce in reliance upon ruling NY D86228 since 1999. In that time, Plaintiff has not altered the ingredients of the imported white sauce. As confirmed by laboratory results, Customs also agrees that Plaintiff has not altered the composition of the imported white sauce.

In March 2004, Customs requested information regarding an importation of Kosher white sauce. Plaintiff cooperated with the request for information, responded to specific questions about its white sauce, provided samples of the white sauce, and supplied its customer list. Customs continued its investigation of Plaintiff's importation of white sauce and queried

---

[2]HTSUS (1999) tariff subheading 2103.90.9060 provided for "[s]auces and preparations therefor; . . . : [o]ther: [o]ther: [o]ther: [o]ther" at a duty rate of 6.6% ad valorem.

[3]HTSUS (2005) tariff subheading 2103.90.9091 provides for "[s]auces and preparations therefor; . . . : [o]ther: [o]ther: [o]ther: [o]ther" at a duty rate of 6.4% ad valorem.

Plaintiff's primary customer about its use of Plaintiff's white sauce. In November 2004, that

customer responded that it used all white sauce purchased from Plaintiff in the manufacture of

various cheese products.

Based upon the results of its investigation, Customs concluded that the white sauce

Plaintiff had been importing was not accurately described by ruling NY D86228. Customs

further determined that Plaintiff's white sauce was classifiable in HTSUS tariff subheading

0405.20.3000.[4] On April 18, 2005, Customs issued a Notice of Action reclassifying unliquidated

entries and all future shipments of Plaintiff's white sauce in HTSUS tariff subheading

0405.20.3000. The Notice of Action covers approximately 86 entries of Plaintiff's white sauce

and specifies that "action has been taken" to rate advance the imported white sauce. The net

result of Customs' reclassification of Plaintiff's imported white sauce is an estimated 2400%

increase in duty. In addition, the Notice of Action states that "all shipments of this product must

be classified as above."

When it received the Notice of Action, Plaintiff immediately ceased importing white

sauce. All merchandise then on the water has been placed in a customs bonded warehouse.

On May 6, 2005, Customs liquidated sixty (60) of the entries included on the Notice of

Action. On May 9, 2005, Plaintiff filed a summons and complaint with this Court, alleging

---

[4]HTSUS (2005) tariff subheading 0405.30.3000 provides for "[b]utter and other fats and oils derived from milk; dairy spreads: . . . [d]airy spreads: [b]utter substitutes, whether in liquid or solid state: [c]ontaining over 45 percent by weight of butterfat: [o]ther." Goods imported under tariff subheading 0405.20.3000 are subject to duty at $1.996 per kilogram and an additional safeguard duty under tariff subheadings 9904.05.47 through 9904.05.47 based on the "CIF" price per kilogram.

jurisdiction pursuant to 28 U.S.C. § 1581(h) (2000).[5]  Plaintiff requested – among other things –

a declaratory judgment that the Notice of Action is null and void because Customs failed to

follow its own administrative procedures by revoking or modifying ICP's ruling other than

pursuant to 19 U.S.C. § 1625(c) (2000).[6]

---

[5]28 U.S.C. § 1581(h) states that

[t]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review, prior to the importation of the goods involved, a ruling issued by the Secretary of the Treasury, or a refusal to issue or change such a ruling, relating to classification, valuation, rate of duty, marking, restricted merchandise, entry requirements, drawbacks, vessel repairs, or similar matters, but only if the party commencing the civil action demonstrates to the court that he would be irreparably harmed unless given an opportunity to obtain judicial review prior to such importation.

[6]19 U.S.C. § 1625(c) states that

[a] proposed interpretive ruling or decision which would –
        (1) modify (other than to correct a clerical error) or revoke a prior
        interpretive ruling or decision which has been in effect for at least
        60 days; or
        (2) have the effect of modifying the treatment previously accorded
        by the Customs Service to substantially identical transactions;
shall be published in the Customs Bulletin.  The Secretary shall give interested parties an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision.  After consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the closing of the comment period.  The final ruling or decision shall become effective 60 days after the date of its publication.

PARTIES' CONTENTIONS

I.      **Plaintiff's Contentions**

    A.      Jurisdiction

Although ICP initially pleaded that this Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1581(h), it altered its position and embraced the Court's suggestion that jurisdiction was available under 28 U.S.C. § 1581(i)(4) (2000). In support of the position that the other subsections of § 1581 were manifestly inadequate,[7] Plaintiff argued that it could not be assured – under another subsection of § 1581 – that it would be heard on the merits of its case in time to provide meaningful relief. (Pl.'s Mem. of P. & A. in Opp'n to Def.'s Mot. to Dismiss and Def.'s Mot. for J. on the Agency R. and in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Reply") at 5.) Plaintiff stated that it would be unable to meet contractual commitments with its principal customer if its importations of white sauce did not resume by the end of May 2005. (Pl.'s Reply at 6.) Further, ICP replied that it faces millions of dollars of tax liability if it is unable to finalize the purchase and installation of the equipment for its manufacturing plant. (Pl.'s Reply at 6.) If the Notice of Action is allowed to stand, ICP alleged that it will breach its contract with its principal supplier. (Pl.'s Reply at 6.) Plaintiff further argued that jurisdiction was proper under § 1581(i)(4) because it would allow the Court to provide a prospective remedy, which a traditional case under § 1581(a) would not.[8] (Pl.'s Reply at 7.)

---

    [7]See the Jurisdiction section of this opinion, infra, for the analysis of the requirements to acquire jurisdiction under 28 U.S.C. § 1581(i).

    [8]While Plaintiff is technically correct on this point, the Court does not base its jurisdiction decision on the prospectiveness of the relief available under § 1581(i)(4). Although ICP prayed for declaratory relief with regard to future imports of its white sauce, it presented a wolf in

B.     Exhaustion of Administrative Remedies

In response to Customs' argument that Plaintiff's claims be dismissed because it failed to exhaust its administrative remedies, Plaintiff asserted that its claims are ripe for adjudication and that exhaustion of administrative remedies is not appropriate as a matter of law in this case. (Pl.'s Reply at 9.)  In support of its position, Plaintiff offered that its issues are fit for judicial decision (because the issues are purely legal, were posed concretely, and relate to a final agency action) and because ICP would suffer hardship if the court withheld its consideration.  (Pl.'s Reply at 9 (citing Abbott Labs. v. Gardner, 387 U.S. 136, 148-151 (1967)).)  Further, Plaintiff cited 28 U.S.C. § 2637(d) (2000) for the proposition that exhaustion of administrative remedies under § 1581(i) is required only "where appropriate."  (Pl.'s Reply at 9.)

C.     Unlawful Notice of Action

ICP also set forth the reasons that the Notice of Action issued by Customs was not lawful. First, ICP stated that Customs' conclusion that the principal use of the white sauce had changed was incorrect as a matter of law because Customs did not properly apply the rule for determining principal use. (Pl.'s Reply at 13.)  According to ICP, Customs failed to determine the class or kind of goods to which its imported white sauce belongs (Pl.'s Reply at 15-16) and incorrectly relied upon the actual use of the imported white sauce to establish principal use (Pl.'s Reply at 16-18).  ICP further argued that even if the actual use of the imported white sauce were different

---

sheep's clothes.  In fact, ICP couched injunctive relief in declaratory relief terms.  Plaintiff failed to properly move for injunctive relief.  Therefore, future entries of Plaintiff's white sauce are not before this Court.

from the principal use of the class or kind of goods to which the white sauce belongs the binding

ruling would remain valid because principal use provisions contemplate that some goods

classified thereunder may be put to atypical uses.  (Pl.'s Reply at 18-22.)

D.       § 1625 Applies to the Notice of Action

ICP next argued that Customs' Notice of Action is an "interpretive ruling or decision"

within the scope of 19 U.S.C. § 1625(c).  (Pl.'s Reply at 22.)  In support of the argument,

Plaintiff asserted that Customs' consistent treatment of ICP's white sauce for more than ten (10)

years was sufficient to establish at "treatment" within the scope of § 1625(c).  (Pl.'s Reply at 23.)

In addition, ICP asserted that the Notice of Action satisfied the requirements of an "interpretive

ruling" as the term has been defined by this Court and in accordance with Congressional intent.

(Pl.'s Reply at 24-30.)  Regardless of whether the Notice of Action is an interpretive ruling,

Plaintiff urged the Court to rule that the Notice of Action is a "decision" as contemplated by §

1625(c) based on the common meaning of the term and other courts' interpretations.  (Pl.'s Reply

at 30-34.)  Even if the principal use of ICP's white sauce had changed, Plaintiff submitted that

Customs was nonetheless bound to follow the administrative procedures to revoke or modify

ICP's ruling.  (Pl.'s Reply at 34.)

E.       Other Issues

Customs challenged Plaintiff's causes of action pursuant to the Administrative Procedure

Act (APA) and the Due Process Clause of the United States Constitution.[9]  In its brief, Plaintiff

refuted Customs' assertions and repeated the validity of ICP's claims.  (Pl.'s Reply at 36-37.)

II.      **Defendant's Contentions**

In response to Plaintiff's First Amended Complaint and Motion for Summary Judgment,

the government filed a Motion to Dismiss and a Motion of Judgment on the Agency Record.  The

arguments set forth therein are summarized below.

A.       Motion to Dismiss

1.       Lack of subject matter jurisdiction

Defendant contended that this Court lacks subject matter jurisdiction because another

subsection – other than that pleaded by Plaintiff or adopted by this Court – of the jurisdictional

statute provides an adequate remedy for Plaintiff's claims.  (Mem. in Supp. of Def.'s Mot. to

Dismiss and in Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s MTD Mem.") at 4.)  The government

suggested that because Plaintiff failed to satisfy the administrative prerequisites to qualify for

jurisdiction under 28 U.S.C. § 1581(a) (2000), this Court lacks subject matter jurisdiction.  In

addition, Defendant argued that Plaintiff failed to establish that the other subsections of the

jurisdictional statute were manifestly inadequate as required to obtain jurisdiction under 28

---

[9]The Court need not reach Plaintiff's APA and Constitutional claims.  The case is resolved in Plaintiff's favor on other grounds.

U.S.C. § 1581(i). (Def.'s MTD Mem. at 7-12.) Specifically, Defendant insisted that economic

or financial harm that may occur as a result of pursuing a traditional jurisdictional subsection is

insufficient to demonstrate that the other subsections are manifestly inadequate.

2.      Ripeness and failure to exhaust administrative remedies

Defendant urged that this Court rule that Plaintiff's case is not ripe because ICP's issues

are not yet fit for judicial review and because ICP would not suffer unreasonable hardship if

consideration were delayed. (Def.'s MTD Mem. at 13.) Defendant suggested that Customs had

not yet completed its decision making process. As such, according to Defendant, the issues

about which Plaintiff complained were not yet properly before the Court.

3.      Failure to state claim

In its Motion to Dismiss, Defendant advanced two positions in support of its contention

that Plaintiff failed to state a claim upon which relief could be granted. Each is addressed below.

a.      No interpretive ruling or decision

Defendant insisted that Plaintiff failed to point to "proposed interpretive ruling or

decision" that modified or revoked an existing ruling or decision as required by 19 U.S.C. §

1625(c). (Def.'s MTD Mem. at 16-17.) Defendant advocated that the Notice of Action does not

contain a complex written analysis that might trigger the notice and comment period mandated

by § 1625(c). (Def.'s MTD Mem. at 17-18.) Further, Defendant noted that, by regulation, the

Notice of Action is "simply a notice to the importer of a <u>proposed</u> Customs action."  (Def.'s

MTD Mem. at 19 (emphasis added).)


     b.  Other claims

   Defendant noted that Plaintiff's Complaint alleged a cause of action for Customs having

modified ICP's ruling concerning white sauce absent a "compelling reason."  (Def.'s MTD Mem.

at 20.)  Defendant argued that even "sharp breaks" in agency practice are allowed so long as they

are rational under the statutory framework.  (Def.'s MTD Mem. at 20-21.)  Because its actions

were rational – as urged by Defendant, they did not violate the "compelling reason" test.

   With regard to the Plaintiff's APA and Due Process claims, Defendant asserted that they

must fail because the claims rest on the theory that the Notice of Action modified ICP's ruling.

(Def.'s MTD Mem. at 20.)  Because Defendant contended that the Notice of Action was merely

informational, it could not be the basis for a claim that Plaintiff's rights under the APA or

Constitution had been violated.  (Def.'s MTD Mem. at 21-22.)


   B.  <u>Motion for Judgment on the Agency Record</u>

   After arguing that this Court's decision in this matter must be made on the Administrative

Record, Defendant posited one argument in support of Customs' decision that ICP's ruling on

white sauce did not govern the entries at issue.  (Mem. in Opp'n to Pl.'s Mot. for Summ. J. and

in Supp. of Def.'s Mot. for J. upon the Agency R. ("Def.'s MJAR Mem.").)  Defendant asserted

that because its actions were rational and supported by evidence in the administrative record,

Plaintiff is unable to overcome the arbitrary and capricious standard of review.  (Def.'s MJAR

Mem. at 12.)  Defendant pointed to four (4) alleged changes to the imported product upon which

Customs relied in determining that the imported white sauce was not covered by ruling NY

D86228:

> 1.   The country of origin of the imported white sauce was New Zealand rather than Israel as stated in the ruling.  (Def.'s MJAR Mem. at 12.)
> 2.   The consistency of the white sauce changed from a "thick liquid" (Admin. R. at 95) to a soft material "capable of being spread in a fashion similar to butter or mayonnaise" (Admin. R. at 10).  (Def.'s MJAR Mem. at 13.)
> 3.   The imported white sauce requires processing beyond that described in the ruling request.  (Def.'s MJAR Mem. at 13.)
> 4.   The use of the white sauce changed.  (Def.'s MJAR Mem. at 13.)

Because of these changes, Customs argued its decision to not apply ICP's ruling to the imports at

issue was rational.  (Def.'s MJAR Mem. at 15-16.)[10]

### JURISDICTION

As in all cases, the first issue for the court to determine is whether it has jurisdiction.  On

May 12 and 13, 2005, the parties were heard in open court in regard to the jurisdiction of this

Court to proceed in this case.  After full consideration of the matter and the arguments presented,

the Court ruled on May 13, 2005, in open court, that jurisdiction was not proper under § 1581(h)

---

[10]Customs also suggested that ICP acquired its ruling by making material false statements.  (Def.'s MJAR Mem. at 17-18.)  Because absolutely nothing in the Administrative Record supports this contention, this Court finds no reason to examine the issue further.

but does lie under § 1581(i).[11]  For the following reasons, this Court reaffirms its decision to

allow this matter to proceed under § 1581(i)(4).[12]

Federal courts have limited jurisdiction.  Norcal/Crosetti Foods, Inc. v. United States, 963

F.2d 356, 358 (Fed. Cir. 1992).  Congress defined the jurisdiction of the Court of International

Trade in 28 U.S.C. § 1581 (2000).  "Subsections (a)-(h) delineate particular laws over which the

Court of International Trade may assert jurisdiction."  Id.  "Subsection § 1581(i) is a 'catch-all'

provision, allowing the [Court of International Trade] to take jurisdiction over designated causes

of action founded on other provisions of law."  Id. at 359.  However, the jurisdiction of this Court

pursuant to § 1581(i) is strictly limited.  The provision is not intended to create new causes of

action; it only confers subject matter jurisdiction on the court.  Customs Courts Act of 1980, Pub.

L. no. 96-417, § 1581(i), 1980 U.S.C.C.A.N. 3759 (codified at 28 U.S.C. § 1581(i)).

Section 1581(i)(4) "grants the court residual jurisdiction of any civil action arising out of

the enforcement or administration of the customs laws."  Thyssen Steel Co. v. United States, 13

---

[11]Plaintiff filed an amended complaint on May 18, 2005, alleging jurisdiction pursuant to 28 U.S.C. § 1581(i)(4).

[12]28 U.S.C. § 1581(i)(4) states that

[i]n addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for –
. . .
(4) administration and enforcement with respect to the matters
referred to in paragraphs (1)-(3) of this subsection and subsections
(a)-(h) of this section.
. . .

CIT 323, 328, 712 F. Supp. 202 (1989) (quotation and citation omitted).  Normally, "[w]here a

litigant has access to the court by traditional means, such as under § 1581(a), it must avail itself

of that avenue of approach and comply with all relevant prerequisites." Id.  A litigant "cannot

circumvent the prerequisites [of another jurisdictional subsection] by invoking jurisdiction under

§ 1581(i), unless the remedy provided under another subsection of § 1581 would be manifestly

inadequate or when necessary, because of special circumstances, to avoid extraordinary and

unjustified delays caused by the exhaustion of administrative remedies." Id. (quotation and

citation omitted) (emphasis added).

       Determining whether § 1581(i) jurisdiction lies requires a close examination of the

particular facts of the moving party.  The party asserting § 1581(i) jurisdiction has the burden of

demonstrating the manifest inadequacy of the remedies available in subsections (a) through (h).

Id.  In the matter before the Court, Plaintiff made sufficient showing of the manifest inadequacy

of the other subsections of § 1581 to justify retaining jurisdiction under subsection § 1581(i)(4).

       ICP's matter is distinguishable from that addressed in Am. Air Parcel Forwarding Co.,

Ltd. v. United States, 718 F.2d 1546 (Fed. Cir. 1983) ("Am. Air Parcel II").  American Air Parcel

was a Hong Kong-based company that shipped made-to-measure clothing to the United States.

At the urging of American Air Parcel, Customs issued an internal advice ruling that valued the

imported clothing on the basis of the manufacturers' transactions rather than the much higher

resale price to the U.S. customer.  One year later, Customs revoked the internal advice upon

which American Air Parcel had relied and retroactively assessed duty on unliquidated entries at

the higher U.S. customer price.  The importer sought to challenge the retroactivity of the ruling

revocation before the Court of International Trade. After Customs liquidated entries pursuant to the ruling revocation and after the time to file protests therefor had expired, plaintiffs[13] brought their case under 28 U.S.C. §§ 1581(h) and (i). American Air Parcel argued that the "greatly increased duties it must pay" drove it into bankruptcy. Id. at 1549. The Court of International Trade dismissed the plaintiffs' case for lack of jurisdiction. Am. Air Parcel Forwarding Co., Ltd., v. United States, 5 CIT 8, 557 F. Supp. 605 (1983). The Court of Appeals affirmed, stating that "the traditional avenue of approach to the court under 28 U.S.C. § 1581(a) was not intended to be so easily circumvented, whereby it would become merely a matter of election by the litigant." Am. Air Parcel II, 718 F.2d at 1550.

Unlike American Air Parcel, ICP did not sleep on its rights and miss its opportunity to seek administrative and judicial review of its case. On the contrary, ICP filed its summons and complaint before this Court within three (3) weeks after the Notice of Action was issued, well within the deadline for filing a protest had ICP's circumstances not made the traditional protest route completely inadequate. Further, in the present matter, there is an allegation that Customs deliberately violated a statute and its own regulations. Plaintiff alleged, and the evidence will later substantiate, that Customs' actions were illegal – or ultra vires. Review of an agency action "to determine whether such action falls within the agency's congressionally-delegated authority and whether the statutory language authorizing the agency action has been properly construed" is within this Court's jurisdiction. Pac Fung Feather Co., Ltd. v. United States, 19 CIT 1451, 1456,

---

[13]American Air Parcel was joined as a plaintiff by its customs broker, E.C. McAfee Co.

911 F. Supp. 529 (1995), aff'd, 111 F.2d 114 (Fed. Cir. 1997) (discussing this Court's

jurisdiction under § 1581(i) to review Customs' promulgation of textile origin rules).

In Pac Fung, the importers were not challenging the application of the rules to specific

merchandise but were challenging the rules themselves. Id. Similarly, ICP is not challenging the

underlying application of Customs' decision to its merchandise. In other words, Plaintiff is not

disputing Customs' classification of its white sauce as enunciated in the Notice of Action. ICP

objects to the Notice of Action itself and Customs' authority to issue it. This Court agrees that

"[i]t is properly within the jurisdictional province of the court to declare ultra vires and void,

agency action that is beyond the scope of its defined statutory authority." Id.

The present case is more like Dofasco Inc. v. United States, 326 F. Supp. 2d 1340 (CIT

2004), aff'd, 390 F.3d 1370 (Fed. Cir. 2004). In Dofasco, the plaintiff contested the Department

of Commerce's administrative review of Dofasco's antidumping duty order based upon an

untimely request for such by a domestic producer. "Dofasco claim[ed] that being required to

participate in an unlawfully commenced and burdensome review provide[d] sufficient reason to

invoke the Court's residual jurisdiction." Id. at 1342. The court agreed and took jurisdiction

under § 1581(i). The court stated that it was clear that the plaintiff's desired objective could not

be secured through a judicial challenge mounted after the administrative review was complete.

Id. at 1343 (quoting Asociacion Colombiana de Exportadores de Flores v. United States, 13 CIT

584, 586, 717 F. Supp. 847 (1989), aff'd, 903 F.2d 1555 (Fed. Cir. 1990)). In Dofasco, the

plaintiff's action would be moot by the time the administrative review was complete. Id. The

court stated that "[t]his Court has repeatedly found section 1581(i) jurisdiction in cases where, as

here, the review that the plaintiff seeks to prevent will have already occurred by the time relief

under another provision of section 1581 is available, rendering such relief manifestly

inadequate." Id. at 1346 (citations omitted).

Although no antidumping review is at issue in the case at bar, Plaintiff sought to avoid

similarly burdensome – and on these facts, manifestly inadequate – procedures that would be

unnecessary but for Customs' deliberate violation of statue and regulations. Those procedures

would require multiple protests directed to the current and, in all likelihood, future liquidations

of plaintiff's import entries and also are likely to require multiple judicial challenges to protest

denials. It is manifestly inadequate to force a litigant into "costly and time-consuming," id. at

1345, administrative processes where the government has deliberately circumvented the statute,

its mandate, and the agency's own regulations. Like in Dofasco, the remedy[14] ICP sought before

this Court would be moot if ICP were required to await the very liquidations it endeavored to

thwart.

Plaintiff has presented unrebutted evidence that it is on the brink of bankruptcy. It is

unable to meet substantial purchase contract commitments because it is economically infeasible

for ICP to import white sauce at the rate of duty imposed by Customs in the rate advance. ICP is

also unable to meet its considerable contractual sales obligations because its supply of white

sauce has effectively been cut off. Further, Plaintiff has had to cease construction on its plant,

which was due to begin operations in August 2005 and employ two hundred fifty (250) people.

In addition, Plaintiff is at serious risk of defaulting on loans it secured to build the plant and

---

[14]ICP sought a declaration that the Notice of Action is null and void and, therefore, a halt
to liquidations thereunder.

purchase equipment because ICP cannot import the white sauce necessary to begin operations at its facility.

All Customs had to do to revoke the binding ruling was to follow the procedures outlined in 19 U.S.C. § 1625. The ruling could have been revoked by early 2005 had Customs adhered to those procedures. Had Customs acted as Congress intended, Plaintiff would not have been lulled into a false sense of security and continued its imports while it believed legitimately that it could rely upon the previously obtained binding ruling. Instead, Customs internally decided to revoke the binding ruling and did so – in effect – by issuing the Notice of Action. Customs purposefully ignored its own regulations as well as the specific requirements of § 1625, which were specifically required by Congress. If Customs' actions were the law, Congress would clearly have to re-examine this entire area. The sleight of hand used by Customs in this matter does not serve to augment the transparency sought by Congress in enacting § 1625. NAFTA Implementation Act, HR 103-361(I), Pub.L. No. 103-182, 1993 U.S.C.C.A.N. 2674 (codified at 19 U.S.C. § 1625(c)).

Customs had more than one year to conduct its investigation, prepare its case, and hone its arguments against Plaintiff. On the other hand, ICP carried on its operations as normal, making plans and commitments, unaware that Customs was questioning the classification of its product, and in reliance upon the binding ruling it secured from Customs. In the past year while Customs questioned internally the classification of Plaintiff's imported white sauce, ICP relied to its detriment on Customs to fulfill the agency's statutory obligation to follow the administrative

procedure to revoke or modify a ruling deemed no longer applicable.  That procedure requires a

period for notice and comment and an implementation for the new ruling.

Plaintiff has shown that it will suffer irreparable financial harm if Customs is allowed to

proceed with enforcing the Notice of Action.  Any recourse that may be available to ICP by

pursuing a traditional administrative action of filing a protest or protests would be manifestly

inadequate because it is likely that Plaintiff's business will no longer exist by the time the

administrative and judicial processes are completed.  It would be a hollow victory indeed if

Plaintiff were able to prevail after the administrative process and lengthy litigation before this

Court long after having filed for bankruptcy protection.

Even in light of the expedited protest review now permitted by the recently revised

19 U.S.C. § 1515(b) (2000, as amended by Pub. L. No. 108-429),[15] the administrative process (of

filing a protest) followed by judicial review would be manifestly inadequate under the special

circumstances in this case.  Section 1581(a) cases, under which jurisdictional subsection this

---

[15]19 U.S.C. § 1515(b) states

> [a] request for accelerated disposition of a protest filed in accordance with section
> 1514 of this title may be mailed by certified or registered mail to the appropriate
> customs officer any time <u>concurrent with or</u> following the filing of such protest.
> For purposes of section 1581 of Title 28, a protest which has not been allowed or
> denied in whole or in part within thirty days following the date of mailing by
> certified or registered mail of a request for accelerated disposition shall be deemed
> denied on the thirtieth day following mailing of such request.

(Emphasis added.)  Text is as amended in 2004 by Subsection (b), Pub. L. No. 108-429, § 2104,
which struck out "after ninety days" and inserted "concurrent with or" preceding "following the
filing of such protest."

matter normally would fall, require <u>de novo</u> review.  28 U.S.C. § 2640(a) (2000).[16]  Such review is preceded by the creation of a record before this Court.  Discovery, motions, and any necessary hearings would eat away at the precious little time Plaintiff has before the collapse of its business.  Even with an expedited schedule before this Court, the matter could scarcely be heard on the merits in less than five (5) months after filing.  Under the present circumstances, Plaintiff will be out of business before the merits of the case could be heard.

In contrast, as the government has pointed out, the case presently before this Court must be decided on the Administrative Record.  That record is prepared and on file.  As no facts are in dispute, this Court is able decide the matter within one month from the date of filing.  Any greater delay would be manifestly inadequate.

Having found sufficient justification that jurisdiction under any other subsection of 28 U.S.C. § 1581 would be manifestly inadequate, this Court affirms its previous ruling on May 13, 2005, that the jurisdiction of this Court to rule on this matter lies under 28 U.S.C. § 1581(i)(4).  Further, the Court denies Defendant's Motion to Dismiss Plaintiff's First Amended Complaint for lack of subject matter jurisdiction.

---

[16]28 U.S.C. § 2640 states that the "Court of International Trade shall make its determinations upon the basis of the record made before the court" in "actions contesting the denial of a protest."

**STANDARD OF REVIEW**

I.      **Motion to Dismiss**

A court should not dismiss a complaint for failure to state a claim upon which relief may

be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support

of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957);

see also United States v. Inn Foods, Inc., 264 F. Supp. 2d 1333, 1334 (CIT 2003), rev'd on other

grounds & remanded, 383 F.3d 1319 (Fed. Cir. 2004).  "On a motion to dismiss for failure to

state a claim, any factual allegations in the complaint are assumed to be true and all inferences

are drawn in favor of the plaintiff." Amoco Oil Co. v. United States, 234 F.3d 1374, 1376 (Fed.

Cir. 2000).  Nevertheless, the "plaintiff must plead specific facts, and not merely conclusory

allegations." Inn Foods, 264 F. Supp. 2d at 1335.

II.     **Motion for Judgment on the Agency Record**

The scope of the Court's review in this case is limited to the administrative record before

it. Ammex, Inc. v. United States, 341 F. Supp. 2d 1308, 1311 (CIT 2004) (citation omitted).  For

matters within the ambit of 28 U.S.C. § 1581(i), the standard of review is found in 28 U.S.C.

§ 2640, which directs this Court to 5 U.S.C. § 706.[17]  See Duty Free Int'l, Inc. v. United States,

19 CIT 679, 681 (1995) ("The court reviews an action under 28 U.S.C. § 1581(i) as provided in

5 U.S.C. § 706."); see also Consol. Bearings Co. v. United States, 348 F.3d 997, 1004 (Fed. Cir.

2003) ("[T]his Court will apply the standard of review set forth in 5 U.S.C. § 706 to an action

---

[17]28 U.S.C. § 2640(e) (2000) states that "[i]n any civil action not specified by this section, the Court of International Trade shall review the matter as provided in section 706 of title 5."

instituted pursuant to 28 U.S.C. §1581(i).").  Section 706 provides the standard of review for the

APA and in relevant part reads

> To the extent necessary to decision and when presented, the
> reviewing court shall decide all relevant questions of law, interpret
> constitutional and statutory provisions, and determine the meaning
> or applicability of the terms of the an agency action.  The
> reviewing court shall–
>
>     . . .
>
>       (2)  hold unlawful and set aside agency action, findings,
> and conclusions found to be–
>
>           (A)  arbitrary, capricious, an abuse of discretion, or
>     otherwise not in accordance with law;
>
>           (B) contrary to constitutional right, power, privilege, or
>     immunity;
>
>           (C) in excess of statutory jurisdiction, authority, or
>     limitations, or short of statutory right;
>
>           (D) without observance of procedure required by law;
>
>           (E) unsupported by substantial evidence in a case
>     subject to sections 556 and 557 of this title or otherwise
>     reviewed on the record of an agency hearing provided by
>     statute; or
>
>           (F) unwarranted by the facts to the extent that the facts
>     are subject to trial de novo by the reviewing court.

Section 706 sets forth six separate standards.  See Citizens to Preserve Overton Park, Inc.

v. Volpe, 401 U.S. 402, 413 (1971), rev'd on other grounds by Califano v. Sanders, 430 U.S. 99

(1977).  In Overton Park, the United States Supreme Court offered guidance on when to apply

these various standards.  Id. at 413-14.  The Supreme Court directed that when reviewing agency

actions, subsections A through D always apply but subsections E and F should only be applied in narrow, limited situations.  Id.; see also Hyundai Elecs. Indus. Co., Ltd. v. U.S. Int'l Trade Comm'n, 899 F.2d 1204, 1208 (Fed. Cir. 1990).  Since the agency action in question in this case neither arises out of a rulemaking provision of the APA nor is based on a public adjudicatory hearing, subsection E does not apply.  Overton Park, 430 U.S. at 414.  Subsection F de novo review is applicable only when (1) "the action is adjudicatory in nature and the agency factfinding procedures are inadequate," or (2) "issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action," id. at 415, which section is also inapposite.

Regardless of the inapplicability of subsections E and F, the "generally applicable standards of section 706 require the reviewing court to engage in a substantial inquiry," which means that the review must be "thorough, probing, in-depth."  Id. at 415.  This does not mean, however, that the court is "empowered to substitute its judgment for that of the agency."  Id. at 416; see also Duty Free Int'l, 19 CIT at 681.  This Court notes that the "ultimate standard of review is a narrow one."  Overton Park at 416.

The other four standards articulated in section 706 are all relevant in this matter.  Because Plaintiff asserted statutory violation and due process claims, subsections B through D are invoked: (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitation; (D) without observance of procedure required by law.  5 U.S.C. § 706(B)-(D).  In addition to these three standards, the residual standard, subsection A, also applies.  See In re Robert J. Gartside, 203 F.3d 1305, 1312 (Fed. Cir. 2000)

("courts have recognized that the 'arbitrary, capricious' standard is one of default").  The

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law"

standard is deemed the most deferential.  Id. ("this standard is generally considered to be the

most deferential of the APA standards of review").  Courts have noted that "the 'touchstone' of

the 'arbitrary, capricious' standard is rationality."  Id. (citing Hyundai, 899 F.2d at 1209).  Thus,

if any of the subsections A through D is not satisfied, this Court will set aside the agency action.


DISCUSSION

In the following sections, the Court addresses the several procedural and substantive

issues before it.  In rendering its decision herein, the Court engaged in no judicial fact finding.

The substantive decision is based entirely on the administrative record before the Court.  The

fundamental issue before this Court is the validity of Customs' action in issuing the Notice of

Action to ICP on April 18, 2005, which reclassified unliquidated entries of ICP's white sauce and

directed that all future shipments of white sauce be classified in tariff subheading 0405.20.3000.

For the reasons that follow, the Court holds that the Notice of Action is null and void.[18]


**I.         Plaintiff Stated a Cause of Action upon Which Relief May Be Granted.**

The APA entitles "[a] person suffering legal wrong because of agency action, or

adversely affected or aggrieved by agency action within the meaning of a relevant statute" to

judicial review of the agency action.  5 U.S.C. § 702.  Plaintiff stated a cause of action under the

---

[18]The underlying classification of the white sauce is not before the Court and will not be
addressed herein.

APA in its First Amended Complaint. (First Am. Compl. at paras. 36-39.)[19] Plaintiff directly

challenged an "agency action," i.e., the issuance by Customs of the Notice of Action, and alleged

that it was adversely affected thereby. This Court finds insufficient reason to hold that Plaintiff

"can prove no set of facts in support of [its] claim which would entitle [it] to relief." Conley, 355

U.S. at 45-46. Accordingly, this Court denies Defendant's Motion to Dismiss Plaintiff's First

Amended Complaint for failure to state a claim upon which relief may be granted.


**II.      Plaintiff Was Not Required to Exhaust Its Administrative Remedies.**

Although Defendant argued that this matter must be dismissed because Plaintiff has failed

to exhaust its administrative remedies, this Court does not agree. "[T]he Court of International

Trade shall, where appropriate, require exhaustion of administrative remedies." 28 U.S.C.

§ 2637(d). This Court does not find exhaustion to be appropriate in this case. Where, as here,

jurisdiction under another subsection of § 1581 is manifestly inadequate, exhaustion of

administrative remedies is not required. See Pac Fung, 19 CIT at 1456. Accordingly, this Court

rules that Plaintiff was not required to exhaust its administrative remedies before seeking redress

here.

---

[19]Plaintiff's First Amended Complaint references the APA in paragraphs 3 and 10. Paragraph 10 of Plaintiff's First Amended Complaint incorrectly refers to § 702 in connection with jurisdiction, rather than cause of action. The APA does not grant "subject matter jurisdiction permitting federal judicial review of agency action." Califano v. Sanders, 430 U.S. 99, 107 (1977); see also Am. Air Parcel, 718 F.2d at 1552 ("[T]he APA is not a jurisdictional statute and does not confer jurisdiction on a court not already possessing it."). This error in pleading is not fatal.

**III.    Plaintiff's Issues Are Ripe for Judicial Determination.**

Defendant also argued that Plaintiff's claims are not ripe for judicial review.  The Court

disagrees.  The ripeness inquiry is designed "to prevent the courts, through avoidance of

premature adjudication, from entangling themselves in abstract disagreements over

administrative policies, and also to protect the agencies from judicial interference until an

administrative decision has been formalized and its effects felt in concrete way by the

challenging parties."  Abbott Labs., 387 U.S. at 148-49, rev'd on other grounds, Califano v.

Sanders, 430 U.S. 99 (1977).  Ripeness must be evaluated in terms of "both the fitness of the

issues for judicial decision and the hardship to the parties of withholding court consideration."

Id. at 149.  Abbott defined "fitness" by determining whether the issues presented for review were

"purely legal" and whether the agency action was final.  Id.

In the present matter, the issues before the Court are purely legal.  The parties agree on all

relevant facts and disagree only as to the application of the law to those facts.  Further, on its

face, the Notice of Action presents a final decision because it states that "action has been taken."

Certainly, ICP has also felt the effects of Customs' action in the form of the Notice of Action in a

"concrete way": its importations were immediately halted; it faces defaulting on purchase and

supply contracts; it ceased construction of its processing facility, which was to have opened in

August 2005; and it is will likely be forced to seek bankruptcy protection.  For these same

reasons, Plaintiff will suffer hardship if this Court's consideration is withheld.  Therefore, this

Court finds that Plaintiff's claims are ripe for judicial determination.

## IV.     The Notice of Action Is Null and Void.

Having resolved the issue of jurisdiction, the Court may now turn its attention to the

substantive issues presented by the parties.  First and foremost is determining whether the

issuance of the Notice of Action was "arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations, or short

of statutory right," or "without procedure required by law."  5 U.S.C. § 706.  This Court finds

that it was all of these.  As such, this Court rules that the Notice of Action issued to Plaintiff by

Customs dated April 18, 2005, is null and void.


### A.     Both statute and Customs' regulations require adherence to formal administrative procedures to revoke or modify an existing binding ruling.

Both parties agree that Plaintiff obtained a binding tariff classification ruling and that the

ruling remains valid for the merchandise it describes.  Plaintiff argued that Customs must adhere

to ruling modification or revocation procedures to rescind Plaintiff's right to rely upon the ruling.

Customs argued that the imported product is not described by ICP's tariff classification ruling.

Specifically, Customs asserted that "changed circumstances" warrant the ruling not being applied

to Plaintiff's imported white sauce.

Customs regulations state that "a ruling letter issued by . . . Customs . . . represents the

official position of . . . Customs . . . with respect to the particular transaction or issue described

therein and is binding on . . . Customs . . . until modified or revoked."  19 C.F.R. § 177.9(a)

(emphasis added).  The regulations further state that "[i]n the absence of a change of practice or

other modification or revocation which affects the principle of the ruling set forth in the ruling

letter, that principle may be cited as authority in the disposition of transactions involving the same circumstances." Id. (emphasis added).

If a Customs field office determines that a ruling should be modified or revoked, the findings and recommendations of that field office must be forwarded to Customs Headquarters for consideration. 19 C.F.R. § 177.9(b)(1). "Otherwise, if the transaction described in the ruling letter and the actual transaction are the same, and any and all conditions set forth in the ruling letter have been satisfied, the ruling will be applied to the transaction." Id. Tariff classification rulings "will be applied only with respect to transactions involving articles identical to the sample submitted with the ruling request or to articles whose description is identical to the description set forth in the ruling letter." 19 C.F.R. § 177.9(b)(2).

When an interpretive ruling is "found to be in error or not in accord with the current views of Customs," it "may be modified or revoked by an interpretive ruling." 19 C.F.R. § 177.12(a). Both statute and regulation govern the method by which Customs may modify or revoke a ruling.

The statute states that "[a] proposed interpretive ruling or decision which would – (1) modify . . . or revoke a prior interpretive ruling or decision . . .; or (2) have the effect of modifying the treatment previously accorded by . . . Customs . . . to substantially identical transactions" must be published in the Customs Bulletin. 19 U.S.C. § 1625(c) Thereafter, interested parties must be given an opportunity to comment on the proposed ruling or decision. Customs is then required to publish the final ruling or decision, which will become effective sixty (60) days after publication. Id. As such, ruling revocations or modifications pursuant to

this statute may have <u>only</u> prospective effect.  The purpose of this section is to "provide

<u>assurances of transparency</u> concerning Customs rulings."  NAFTA Implementation Act, HR 103-

361(I), Pub.L. 103-182, 1993 U.S.C.C.A.N. 2674 (emphasis added).

Customs may argue that § 1625 controls only those interpretive rulings or decisions that

are proposed, not those that are final.  Under such a statutory construction, Customs, by issuing a

final Notice of Action or similar such decision, could accomplish what is effectively a retroactive

revocation of any binding ruling, dispensing entirely with the procedures for notice and comment

and sixty (60)-day delayed effective date that Congress specified in § 1625.  This Court will not

adopt a construction of § 1625 that, contrary to congressional intent, treats the statutory

procedures as avoidable at the whim of Customs and thus renders them meaningless.

Further, the regulations require that Customs follow the procedures outlined in 19 U.S.C.

§ 1625 when the agency "<u>contemplates</u> the issuance of an interpretive ruling that would modify

or revoke an interpretive ruling."  19 C.F.R. § 177.12(b).  The Administrative Record is replete

with communications among various Customs officials who were contemplating the possibility

and need to revoke or modify Plaintiff's classification ruling.  These discussions culminated in a

document referred to on Customs' own time line for this matter as a "ruling."  (Admin. R. at

Index B para.1; 295-99)  This document states that Plaintiff's ruling was "based on an erroneous

assertion of facts as to the use of the product."  <u>Id.</u>  As such, the document concluded that the

ruling "may not be relied upon by the importer."  <u>Id.</u>  Defendant now concedes that the ruling is

valid; such a concession is inconsistent with any assertion that the ruling was invalidated by a

misrepresentation in the ruling request.  Moreover, as discussed <u>infra</u>, the administrative record

demonstrates that repeated laboratory analyses conducted by Customs concluded that the

merchandise imported on the entries addressed by the Notice of Action does not differ in any

physical respect from the merchandise on which the ruling was obtained. Under such

circumstances, the action and course required by Customs' own regulations was to modify or

revoke the interpretive ruling. As a reminder, Customs regulations state that "when Customs

contemplates the issuance of an interpretive ruling that would modify or revoke an interpretive

ruling" the formal ruling modification and revocation procedures apply. 19 C.F.R. § 177.12(b).


          B.        The Notice of Action was a "decision" within the context of 19 U.S.C. § 1625(c).

          Seemingly to circumvent the statute and its own regulations, Customs issued a Notice of

Action reclassifying Plaintiff's unliquidated white sauce entries in a tariff provision carrying a

much higher duty rate than had previously been assessed pursuant to Plaintiff's binding ruling. If

the Notice of Action is a "proposed interpretive ruling or decision" within the scope of § 1625(c),

Customs' action in issuing such was without observance of procedure required by law, in excess

of the government's statutory authority, and not in accordance with law.

          Although it was not issued in the form of a ruling, the Notice of Action is, on its face, a

"decision." Defendant did not address the meaning of "decision" in its briefs. The Court can

only deduce from such silence that Defendant reads the statute's language – "proposed

interpretative ruling or decision" – in the collective, in other words, as meaning only one thing.

This interpretation of the statute is flawed. In construing a statute, the Court is obligated to give

effect, if possible, to every word used. Len-Ron Mfg. Co., Inc. v. United States, 24 CIT 948,

964, 118 F. Supp. 2d 1266 (2000), aff'd, 334 F.3d 1304 (2003).  Further, "[c]annons of

construction ordinarily suggest that terms connected by a disjunctive be given separate meanings,

unless the context dictates otherwise."  Id. (quotation and citation omitted).  Accordingly, this

Court interprets § 1625 as applying to (1) proposed interpretive rulings, and (2) decisions.

     "Decision" is not defined by the statute.  A basic principle of statutory construction is that

courts give undefined terms their common and ordinary meaning.  Perrin v. United States, 444

U.S. 37, 42 (1979).  Dictionaries are a suitable resource for adducing the common meaning of a

term.  Koyo Seiko Co., Ltd. v. United States, 36 F.3d 1565, 1571 n.9 (Fed. Cir. 1994); see also

Best Power Tech. Sales Corp. v. Austin, 984 F.2d 1172, 1177 (Fed. Cir. 1993) ("It is a basic

principle of statutory interpretation, however, that undefined terms in a statute are deemed to

have their ordinarily understood meaning.  For that meaning, we look to the dictionary."

(citations omitted)).

     Black's Law Dictionary defines "decision" as "[a] determination arrived at after

consideration of facts, and, in legal context law."  Black's Law Dictionary 407 (6th ed. 1990).

The Oxford English Dictionary defines "decision" as "1.a. [t]he action of deciding (a contest,

controversy, question, etc.); settlement, determination" and as "b. (with a and pl.[ural]) [t]he final

and definite result of examining a question; a conclusion, judgement [sic]: esp. one formally

pronounced in a court of law."  IV The Oxford English Dictionary 332 (2d ed., J. A. Simpson &

E. S. C. Weiner eds., Clarendon Press 1989) (emphasis in original).  Similarly, Webster's defines

"decision" as "a: the act or process of deciding[;] b: a determination arrived at after

consideration: conclusion."  Webster's New Collegiate Dictionary 291 (G & C. Merriam Co.

1981).

The Administrative Record provides ample evidence of Customs' "act or process of

deciding."  It is further clear from the Administrative Record that the Notice of Action is the

"final and definite result" of Customs having considered the question of the correct classification

of ICP's white sauce and the effect of ICP's ruling therefor.  Moreover, the Court received nearly

three hundred (300) pages of Customs' "consideration of facts" and law.

In August 2004, Customs personnel discussed ICP's ruling in several internal

communications.  In one such communication, the writer stated that the Customs National Import

Specialist[20] ("NIS") supported her position that "because of the binding ruling, we cannot just

RA [rate advance] the recent entries."  (Admin. R. at 66.)  The same communication continued

and stated that before a rate advance Customs must have the binding ruling revoked by Customs

Headquarters.  (Admin. R. at 66.)  In December 2004, the Chief of the Special Products Branch

of Customs National Commodity Specialist Division stated in a letter to the Director of the

Commercial Rulings Divisions at Customs Office of Regulations and Rulings ("OR&R") that

"we believe the ruling [NY D86228] is flawed and should be revoked."  (Admin. R. at 277

(emphasis added).)  Incongruously, the same letter postulated that "the ruling cannot be used as

the basis for classification" of ICP's white sauce.  (Admin. R. at 277.)  The Court further notes

that in December 2004 one Customs official stated that Customs "did not have time to go

---

[20]Incidentally, this National Import Specialist is the same individual who drafted ICP's
white sauce ruling.

through the 625 procedures"[21] and that Customs knew "from the discussions we have had in

branch meetings that our superiors have been all over the place on 625 issues[22] and the courts

have been of no help in resolving the problems but have simply added to them."[23]  (Admin. R. at

290.)

By March 2005, Customs had seemingly abandoned the idea of modifying or revoking

ICP's ruling on white sauce.[24]  On March 10, 2005, Customs Chief of the Special Products

Branch of the National Commodity Specialist Division issued a memorandum to Customs

Associate Chief Counsel "on the product for which a tariff classification has been requested."

(Admin. R. at 295.)  The writer stated that because ICP's ruling "was based on an erroneous

assertion of facts as to the use of the product, the classification of the product under a principal

use provision, which relied on those erroneous facts, is also erroneous, and may not be relied

upon by the importer."  (Admin. R. at 296.)  Nevertheless, just five (5) days before Customs

---

[21]The reference in the communication to "625 procedures" appears to be a reference to the procedures required by section 625 of the Tariff Act of 1930, as amended, which are codified as 19 U.S.C. §1625.

[22]The reference in the communication to "625 issues" appears to be a reference to the procedures required by section 625 of the Tariff Act of 1930, as amended, which are codified as 19 U.S.C. §1625.

[23]This Court trusts that this opinion resolves some of the uncertainty within Customs that Customs cannot avoid the requirements of 19 U.S.C. § 1625 because it is not convenient or is time-consuming ("we do not have the time").  This Court will not abide such blatant attempts to violate clear statutory mandate.

[24]It is not lost on this Court that had Customs initiated revocation or modification procedures when it first began serious discussion of the matter in August 2004 the entire process could have been completed by March 2005.

issued the Notice of Action on April 18, 2005, another Customs official was unconvinced and

stated that based on his experience

> . . . unless we [Customs] can demonstrate that the company committed fraud when
> requesting the ruling, OR&R is going to have to revoke the ruling, issue public
> notice, and give the company time to adjust their [sic] import practices based on
> the changed classification.  In other words, I doubt that they will be supportive of
> a rate advance, when the importer can claim they [sic] were relying on a ruling
> issued by Customs.

(Admin. R. at 192.)  Whether "they will be supportive" is – at this juncture – irrelevant; this

Court is not supportive of Customs' action in issuing the Notice of Action.

Because, as the Administrative Record clearly indicates, the Notice of Action is a

"determination [albeit an erroneous one] arrived at after consideration of facts" and law and is

the "final and definite result of examining a question," this Court rules that it is a "decision" for

purposes of 19 U.S.C. § 1625.  The Notice of Action is not only a decision for purposes of 19

U.S.C. § 1625(c), it is also a ruling revocation.  It states that "action has been taken" to reclassify

white sauce, which had heretofore been subject to a binding ruling, imported on the included

entries.  Further, the effect of the Notice of Action is both retroactive, by reclassifying all

unliquidated entries of Plaintiff's white sauce, and prospective, by stating that "**all** shipments of

this product must be classified as above."  (Admin. R. at 16. (emphasis added).)

Retroactive modification or revocation of a ruling or treatment previously accorded is not

permitted by Customs regulation, 19 C.F.R. § 177.12, or statute, 19 U.S.C. § 1625(c).

Accordingly, Customs exceeded its statutory authority by issuing the Notice of Action and did

not observe its own legal procedure.  Furthermore, the issuance of the Notice of Action was not

in accordance with law.  Therefore, the Notice of Action must be declared null and void.

C.      Even if the regulations and statute requiring revocation or modification of the existing ruling did not apply, Customs did not undertake the correct analysis concerning the allegedly changed circumstances of white sauce importations.

The Customs laboratory analyzed ICP's white sauce on at least three (3) occasions: in 2001, in 2004, and in 2005. On each occasion, the laboratory concluded that the imported white sauce was identical to that described in the ruling request and ruling. Thus, it would appear that the ruling request should remain in effect and apply to Plaintiff's imported white sauce.

Customs has made spurious reference to four (4) factors that warrant its decision that Plaintiff's binding classification ruling does not apply to the imported white sauce: 1) the country of origin has changed; 2) the consistency of the product has changed,[25] 3) the post-importation processing changed,[26] and 4) the use of the product has changed. The first three factors are without merit. None is relevant to the "principle of the ruling," 19 C.F.R. § 177.9(a), which was a determination of the classification of the white sauce.[27] Customs cannot point to factors

---

[25]Customs urged this point despite its own laboratory reports that confirmed that ICP's white sauce has remained the same in all material respects. (Admin. R. at 5 ("analyses confirmed ingredients to be as stated by importer"), 10, 54.)

[26]The Court notes that post-importation processing is not mentioned in ruling NY D86228. Customs' argument that the alleged change in post-importation processing is so important to warrant the ruling not being applied to Plaintiff's imported white sauce is disingenuous if processing was not important enough to include in the ruling letter.

[27]It is worth noting that ICP made no assertions in its ruling request with regard to either the consistency or viscosity of the white sauce or its country of origin. The ruling request was silent as to consistency or viscosity. As to origin, the ruling request stated that the white sauce "may be imported [from] Israel" but that "[i]t is possible that imports will come from other countries as well." (A.R. at 98.) ICP did not claim and the ruling request does not address the Israel-U.S. Free Trade Agreement. Therefore, the ruling does not contain a contingency with regard to a special duty program.

irrelevant to classification to justify disregarding a binding tariff classification ruling.[28]  As for

the alleged change in use, Customs failed to perform the requisite analysis to determine such and

further failed to follow its own procedures for revoking or modifying an existing binding ruling.

Tariff subheading 2103.90.9091 is a use provision.  See Orlando Food Corp. v. United

States, 140 F.3d 1437, 1441 (1998).  On this, the parties agree.  Additional U.S. Rule of

Interpretation (AUSRI) 1(a), Harmonized Tariff Schedule of the United States, is statutory and

governs tariff classification of imported goods under use provisions.  The rule states that

> tariff classification controlled by use (other than actual use) is to be determined in
> accordance with the use in the United States at, or immediately prior to, the date
> of importation, of goods of that class or kind to which the imported goods belong,
> and the controlling use is the principal use.

AUSRI 1(a).  "The purpose of 'principal use' provisions in the HTSUS is to classify particular

merchandise according to the ordinary use of such merchandise, even though particular imported

goods may be put to some atypical use."  Primal Lite, Inc. v. United States, 182 F.3d 1362, 1364

(Fed. Cir. 1999).

At a minimum, AUSRI 1(a) requires Customs to determine (1) the "class or kind to which

the imported goods belong" and (2) the principal use of that class or kind of goods at or

immediately prior to the date of importation.  "The scope of the 'class or kind' inquiry should be

narrowly tailored to 'the particular species of which the merchandise is a member.'"  Brother

---

[28]ICP's situation is analogous to a T-shirt importer who requested a classification ruling
for its T-shirts, without specifying the possible colors that may be imported.  Suppose the
importer provided a sample of a red T-shirt.  If Customs issued a ruling request that the
importer's "red" T-shirts were classifiable in a particular tariff subheading, it is incomprehensible
that Customs would argue that the importer could not rely upon that ruling in the importation of
blue, orange, or green otherwise identical T-shirts, when color has no bearing on the
classification of the imported article.

Int'l Corp. v. United States, 248 F. Supp. 2d 1224, 1230 n.7 (CIT 2002) (quoting Primal Lite,

182 F.3d at 1364); see also USR Optonix, Inc. v. United States, 362 F. Supp. 2d 1365, 1381 (CIT

2005).  To determine the class or kind to which the imported goods belong, Customs must

determine the class of goods with which the imported goods are "commercially fungible."

Primal Lite, 182 F.3d at 1364, 1365; Len-Ron Mfg., 24 CIT at 965-66; cf. United States v.

Carborundum Co., 63 CCPA 98, 102, 536 F.2d 373 (1976)[29] ("Factors which have been

considered by courts to be pertinent in determining whether imported merchandise falls within a

particular class or kind include the general physical characteristics of the merchandise, the

expectation of the ultimate purchasers, the channels, class or kind of trade in which the

merchandise moves, the environment of the sale (i.e., accompanying accessories and the manner

in which the merchandise is advertised and displayed), the use, if any, in the same manner as

merchandise which defines the class, the economic practicality of so using the import, and the

---

[29]This Court notes that Carborundum was decided prior to the introduction of the
HTSUS.  The case interpreted statutory provisions of the predecessor to the HTSUS – the Tariff
Schedules of the United States (TSUS).  While the TSUS rule at issue was similar to AUSRI
1(a), it was not identical:

> [A] tariff classification controlled by use (other than actual use) is to be
> determined in accordance with the use in the United States at, or immediately
> prior to, the date of importation, of the articles of that class or kind to which the
> imported articles belong, and the controlling use is the chief use, i.e., the use
> which exceeds all other uses (if any) combined.

Carborundum, 63 CCPA at 101 (quoting TSUS General Interpretive Rule 10(e)(i)) (emphasis
added).

Decisions under the TSUS are not controlling on decisions made under the HTSUS, but TSUS
decisions are instructive when interpreting similar HTSUS provisions.  See E.M. Chems. v.
United States, 20 CIT 382, 386 n.5, 923 F. Supp. 202 (1996).

recognition in the trade of this use." (citations omitted) (emphasis added)).[30] "Susceptibility,

capability, adequacy, or adaptability of the import to the common use of the class is not

controlling." Carborundum, 63 CCPA at 102; Minnetonka Brands, Inc. v. United States, 24 CIT

645, 652, 110 F. Supp. 2d 1020 (2000); USR Optonix, 362 F. Supp. 2d at 1381.

Once the class or kind to which the imported article belongs has been ascertained,

Customs must determine the principal use of that class or kind at or immediately prior to

importation. This Court has defined "principal use" as "the use 'which exceeds any other single

use'" of the article. Lenox Collections v. United States, 20 CIT 194, 196 (1996) (citing

Conversion of the Tariff Schedules of the United States Annotated Into the Nomenclature

Structure of the Harmonized System: Submitting Report at 34-35 (USITC Pub. No. 1400) (June

1983)) (emphasis in original); see also Minnetonka Brands, 24 CIT at 651; USR Optonix, 362 F.

Supp. 2d at 1381. This Court has long-recognized that AUSRI 1(a) requires Customs to

determine "the principal use of the class or kind of goods to which the imports belong and not the

principal use of the specific imports." Group Italglass U.S.A., Inc. v. United States, 17 CIT

1177, 1177, 839 F. Supp. 866 (1993) (emphasis in original); see also Lenox Collections v.

---

[30]The Court notes that Defendant incorrectly interpreted the Carborundum factors.

> [T]he general physical characteristics of the merchandise, the expectation of the
> ultimate purchasers, and the use, if any, in the same manner as merchandise which
> defines the class are essential factors in ascertaining the principal use of the
> imported merchandise under Carborundum . . . .

(Def.'s MJAR Mem. at 14 (emphasis added). In fact, the Carborundum factors Customs cited
apply to determining the class or kind of goods to which the imported merchandise belongs – not
principal use. Carborundum, 63 CCPA at 102. Customs completely ignored the class or kind
step in its so-called principal use analysis.

United States, 19 CIT 345, 346 (1995); Minnetonka Brands, 24 CIT at 651; USR Optonix, 362 F.

Supp. 2d at 1381.

> Evidence of the actual or principal use of the specific imports standing alone could not, absent their constituting the entire class or kind of goods under consideration, make a prima facie case on the issue of principal use where the controlling issue is the principal use of the class or kind to which the merchandise belongs.

Group Italglass, 17 CIT at 1177 n.1. Accordingly, actual use of an imported item is irrelevant to

classification in a principal use provision. See Clarendon Mktg., Inc. v. United States, 144 F.3d

1464, 1467 (1998) ("[A] principal (or chief) use provision . . . may function as a controlling legal

label, in the sense that even if a particular import is proven to be actually used inconsistently with

its principal use, the import is nevertheless classified according to its principal use.")

It is clear from the Administrative Record that Customs failed to conduct the requisite

analysis required by AUSRI 1(a) before it effectively revoked ICP's binding classification ruling

for white sauce. In fact, Customs had the temerity to state that the "only known use of white

sauce is in the making of processed cheese." (Def.'s MJAR Mem. at 13.) Customs' statement is

duplicitous because the only inquiry Customs made as to the use of white sauce – any, not just

ICP's, white sauce – was to one of Plaintiff's customers.

Moreover, the Administrative Record is devoid of any effort by Customs to define the

"class or kind" of goods to which the imported white sauce belongs. Without a defined class or

kind, Customs certainly could not undertake the next step in the AUSRI 1(a) analysis: a

determination of the principal use of the class or kind of goods to which the imported white

sauce belongs. Customs restricted its review to the use of ICP's white sauce. Customs further

limited its examination to the <u>actual</u> use of the imported white sauce by one of Plaintiff's customers. As previously noted, the use – actual or principal – of the specific import in question is not determinative in a AUSRI 1(a) analysis.

Of course, even if Customs had conducted a thorough principal use analysis, the proper course, which is mandated by statute and its own regulations, was for Customs to modify or revoke Plaintiff's existing ruling. Customs exceeded its statutory authority and did not observe its own procedures by issuing the Notice of Action reclassifying Plaintiff's imported white sauce. Further, Customs' actions were not in accordance with law. Accordingly, this Court holds that the Notice of Action is null and void.

**V.      The Entries of ICP's White Sauce Liquidated Pursuant to the Notice of Action under Tariff Heading 0405 Must Be Reliquidated Consistent with Ruling D86228.**

Because this Court has declared the Notice of Action null and void, ICP's position must be returned to that which existed prior to the illegal action by Customs. Ergo, Plaintiff's entries of white sauce must be reliquidated consistent with the binding tariff classification ruling NY D86228. Such reliquidation must be effected no later than June 27, 2005.

**VI.     ICP's White Sauce Ruling NY D86228 Remains in Full Force and Effect.**

Because Customs failed to adhere to the statute and its own regulations applicable to revoking or modifying an existing ruling, this Court further declares that binding tariff classification ruling NY D86228 remains in full force and effect until such time as Customs

modifies or revokes the ruling in compliance with its regulations and procedures set forth by

statute.

### VII.    Judgment in This Case is Stayed in Accordance with USCIT Rule 62(a).

Plaintiff demonstrated that any unnecessary delay will cause further economic hardship

and damage to its business interests. Due to the exigent circumstances in this case, in the interest

of justice, and pursuant to Court of International Trade Rule 62(a), stay of execution of this

judgment is limited to ten (10) business days from June 2, 2005. This period of stay is consistent

with Federal Rule of Civil Procedure 62(a).

### CONCLUSION

For the foregoing reasons, this Court holds: (1) jurisdiction lies under 28 U.S.C. §

1581(i)(4); (2) Customs acted not in accordance with law, exceeded its statutory authority, and

failed to observe its own legal procedures in issuing the Notice of Action to ICP reclassifying

certain entries of ICP's white sauce; (3) therefore, the Notice of Action is null and void; (4)

Customs must reliquidate the entries of ICP's white sauce that were liquidated pursuant to the

Notice of Action; (5) ICP's tariff classification ruling for its white sauce – NY D86228 remains

in full force and effect until properly modified or revoked by Customs in a manner consistent

with the applicable statute and regulations; and (6) judgment in this case is stayed for ten (10)

business days from June 2, 2005. Accordingly, Plaintiff's Motion for Summary Judgment, which

was treated by this Court as a motion for judgment on the agency record, is granted, and

Defendant's Motions to Dismiss and for Judgment on the Agency Record are denied.


/s/        Gregory W. Carman
Gregory W. Carman
Judge


Dated: June 15, 2005
New York, New York

**ERRATUM**


International Custom Products, Inc. v. United States, Court No. 05-341, Slip Op. 05-71, dated June 15, 2005:


      Page 1, the names of Andrew A. Nicely and Priti Seksaria Agrawal are added after the name of Simeon Munchick Kriesberg as Plaintiff's counsel.


June 20, 2005